WYLIE FRANCE, JR., V. THE STATE.

No. 23059. Delivered March 7, 1945.
Rehearing Denied May 2, 1945.

342

The opinion states the case.

*T. J. Ramey*, of Sulphur Springs, and *C. C. McKinney*, of Cooper, for appellant.

*Ernest S. Geons*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is rape. The punishment assessed is confinement in the state penitentiary for a term of five years.

Appellant was indicted by the Grand Jury of Delta County, but the Court, on his own motion, changed the venue of the case to Hopkins County, where it was tried with the result above stated.

Appellant's first complaint relates to the court's action in overruling his motion to quash the indictment on the ground that it was duplicitous in that it charged in the same count rape of a girl under eighteen years of age and rape by force. The indictment, omitting the formal parts, reads as follows:

"'* * * that Wylie France, Jr., on or about the 22nd day of July, A. D., 1944, and anterior to the presentment of this Indictment, in the County of Delta and State of Texas, in and upon Violet Lou Bangs, a female, then and there under the age of 18 years, did make an assault, and the said Wylie France, Jr., did then and there ravish and have carnal knowledge of the said Violet Lou Bangs, the said Violet Lou Bangs not being then and there the wife of the said Wylie France, Jr., etc."

The fact that it was averred in the indictment that he, the said Wylie France, Jr., did then and there ravish and have carnal knowledge of Violet Lou Bangs, she, the said Violet Lou Bangs, being then and there under the age of eighteen years and not the wife of Wylie France, Jr., did not render it duplicitous. It charged but one offense, to-wit, rape, notwithstanding that under this indictment a conviction could be sustained upon proof of either rape by force or with the consent of a female under the age of eighteen years. In support of the opinion here expressed, we refer to the following authorities: Patton v. State, 105 Tex. Cr. R. 128; Dyer v. State, 283 S. W. 820; Osborne v. State, 106 Tex. Cr. R. 310 (315); Rogers v. State, 124 Tex. Cr. R. 430; Fletcher v. State, 147 S. W. (2d) 233 (240); Lamar v. State, 149 S. W. (2d) 89.

Appellant next complains of the court's action in overruling his application for a continuance based on the absence of a number of persons who he asserted would give material evidence in his behalf. The record discloses that he filed his first application for a continuance on the 17th day of September, 1944, at which time the court postponed the case until the 25th day of September. At that time he renewed his application for a continuance, which constituted a second application. This application is deficient in that it fails to allege that the testimony of the absent witnesses "cannot be procured from any other source" as is required by Sec. 1, Art. 544, C. C. P. Hence the court was justified in overruling the same. See Brannan v. State, 108 Tex. Cr. R. 418; 1 S. W. (2d) 279; Mullin v. State, 114 Tex. Cr. R. 225, 24 S. W. (2d) 423; Wheeler v. State, 118 Tex. Cr. R. 358, 42 S. W. (2d) 69.

Appellant challenges the sufficiency of the evidence to sustain his conviction. The State's evidence shows that on the night of the 21st day of July, 1944, appellant and W. H. Stewart invited the prosecutrix to ride with them from the town of Cooper out to appellant's home, but instead of going to his home, they drove out to the Odd Fellows Cemetery, where they made an assault upon her with the intent to have sexual intercourse. She screamed and resisted with all her strength. From there they drove to another place where they renewed the assault. They stuffed a handkerchief in her mouth to prevent her from screaming, and then appellant held her hands while Stewart had an act of sexual intercourse with her. After Stewart had completed the act, he held her while appellant had sexual intercourse with her. They then took her home, where she immediately reported the occurrence to her parents. Persons who re-

sided in the immediate vicinity of the commission of the alleged offense testified that sometime after midnight of the night in question they heard screams of a woman who seemed to be in distress. Early the next morning a handkerchief belonging to the defendant was found at a point near the place where the offense was committed. A doctor, who examined the prosecutrix several days later, testified that her hymen was ruptured and that she bore evidence of bruises about her private parts. The prosecutrix, as well as her mother, testified to marks of violence on her person and that her clothes were torn.

Appellant testified in his own behalf and admitted that he had sexual intercourse with the prosecutrix, but claimed that it was with her consent.

It will thus be noted that an issue of fact was raised which the jury decided adversely to appellant. In our opinion, the evidence is ample to support the jury's conclusion of his guilt.

By Bill of Exception No. 3 appellant complains because the court overruled his motion to require the State to elect upon which offense it would rely for a conviction. Since there was but one offense charged, based on one transaction, there was no alternative, and there could not be any election. Of course, the court submitted the case to the jury on the theory of rape by force as well as rape with the consent of a female under the age of eighteen years, which was proper under the holding of this court in the cases of Dyer v. State, 283 S. W. 820; Osborne v. State, 106 Tex. Cr. R. 310 (315); Patton v. State, 105 Tex. Cr. R. 128. In the last-mentioned case, the offense was charged in language similar to that in the instant case, and this court said that a conviction could be sustained upon proof of either rape by force or by acquiescence of a female under the age of eighteen years.

Bills of Exception Nos. 4, 5, and 6 each relate to the court's action in declining to submit to the jury certain requested charges. We are of the opinion that appellant was not entitled to such instruction under the facts of this case. Hence we overrule his contention.

By Bill of Exception No. 7 appellant complains of the following interrogatory propounded by the District Attorney to the mother of prosecutrix and the following reply made by her:

"Q. I wish you would tell this jury just the physical appear-

ance and what you saw and observed of your daughter when she came home that night, when you first saw her. A. Violet Lou Bangs' voice was very low, her throat was badly swollen, her eyes were puffed out until she could hardly see, and there was finger prints all on her neck on the side and she was very nervous. I had to take hold of her to raise her up."

Appellant objected to the question and answer on the ground that it was but a conclusion and opinion of the witness in reply to a medical question. This matter requires no discussion for the reason that it is quite obvious that the witness stated the facts as she saw them at the time in question and was not a conclusion or opinion. Hence we overrule his contention.

Bill of Exception No. 8 shows that the District Attorney, in his closing argument said:

"They talked about the despondence of the mother. You all didn't see that mother over there cry, you didn't see her shed one single tear (meaning Mrs. Grace France, mother of the defendant). Talk about a mother's love, I wish you would look and make some thought of what the poet said when we talk about a mother's love when he said, (quoting 'Mother O' Mine'). That's the love we are talking about, but you didn't see one tear from this side here (meaning the mother of the defendant and those who sat with him.)"

This bill is deficient in that it fails to negative the fact that it was not provoked or invited by the argument of appellant's counsel. See Sanchez v. State, 181 S. W. (2d) 87, and authorities there cited.

By Bill of Exception No. 9 appellant complains because Mrs. McCasland, a sister of prosecutrix, was permitted to testify that the prosecutrix was fourteen years of age. Appellant objected to this testimony on the ground that it was a conclusion and opinion of the witness. We do not regard it as such. This witness was older than her sister (the prosecutrix) and knew her age. Furthermore, the prosecutrix, as well as her mother, testified that at the time of the commission of the offense she was fourteen years of age, lacking a few months of being fifteen years old. Age may be proved by the testimony of the person whose age is in question, or by any person who has personal knowledge thereof. See Curry v. State, 50 Tex. Cr. R. 158; Young v. State, 89 Tex. Cr. R. 230 (232) ; Costillo v. State, 182 S. W. (2d) 718; Ency. of Evidence, Vol. 1, p. 735; Wigmore on Evidence, (2nd Ed.) Vol. 1, p. 1074, sec. 667.

By Bill of Exception No. 10 it is shown that Mrs. Josie Bullard testified that on the night in question she heard one scream right after another, hollering "O mamma, O mamma"; that such screams continued until they went down and got weaker and weaker; that she recognized the screams to be the voice of Violet Lou Bangs; that she had heard her voice many times, and it was her voice which she heard. It is not uncommon that a person who is familiar with the voice of another may be permitted to testify that she or he recognized the person by his or her voice. See Branch's Ann. Tex. P. C., p. 1345, sec. 2484; Davis v. State, 15 Tex. Cr. App. 594 (598) ; Givens v. State, 35 Tex. Cr. Rep. 563. Appellant's objection to the testimony of the witness was that the screams which she heard sounded to her as if the person who did the screaming was in distress. We think that the objection went more to the weight of the testimony than to its admissibility.

Bill of Exception No. 11 shows that John R. Gunter, while testifying in behalf of the State, was permitted to state that he could distinguish between the scream of a woman and that of a man. We see no error reflected by this bill, because it is generally known that the sound and inflection of the voice is a means by which a person may distinguish whether the person speaking is a man or a woman. Hence we overrule his contention.

Bill of Exception No. 12 relates to the following argument of the District Attorney:

"I will submit to you that if it had been a negro that had done the same thing you would not hesitate a minute to snap his life out."

Appellant objected to the argument, whereupon the court promptly sustained the objection and instructed the jury not to consider it. We think that the prompt action of the court removed all evil effects from the mind of the jury, if any they may have had. See Mathews v. State, 32 Tex. Cr. R. 355; King v. State, 32 Tex. Cr. 463; Groszshmigem v. State, 57 Tex. Cr. R. 241. It is not every improper argument that will call for a reversal of the judgment of conviction, especially is this true when the minimum punishment prescribed for the offense is assessed.

By Bill No. 13 appellant complains because the prosecutrix was permitted to testify that after the alleged assault upon her, she had an "awful pain" that came in her lower left side. Appellant objected to the statement "awful pain" on the ground

that it was but a conclusion of the witness. It occurs to us that the witness was certainly in a position to know whether the pain was severe or light. Consequently there is no merit in the bill.

Bill No. 14 is likewise without merit because the handkerchief and the rubber which were found were admitted by the appellant as belonging to him. Complaint is made in the bill of the testimony given by the prosecutrix as to what she told her mother immediately upon her arrival at home relative to the hankerchief and the rubber. This was a part of the res gestae and was admissible as such.

Bill No. 15 complains of the testimony given by the prosecutrix to the effect that on the night in question, while on the road between the old and the new cemetery, appellant got out of the car and sat on the rear fender thereof while his companion, W. H. Stewart, "then tried his purpose there" and that she began to scream. Appellant's objection to the testimony is based upon the ground that it was an occurrence outside of the presence and hearing of the defendant. The court qualified this bill and in his qualification states that appellant and Stewart had been together on the night in question from 8:00 P. M. until after the time of the alleged offense. The qualification of the bill is quite lengthy and sets out much of the evidence introduced upon the trial, which we do not deem necessary to set out in full, because it is quite evident that appellant was present; that he knew the intent and purpose of Stewart when he left the car and got on the rear fender. Unless he was deaf, which it does not appear from the record, he must have heard her screams because people who were much farther away than he heard the screams of the prosecutrix.

Bill No. 16 complains of the introduction in evidence of the dress and clothes of the prosecutrix showing that the same were torn. These were admissible in evidence as a circumstance showing that she had been roughly treated by the appellant and his companion.

Bill No. 17 complains of the testimony of the prosecutrix as to what she told her mother immediately upon arriving at home relative to the treatment she had received at the hands of the appellant and W. H. Stewart. This testimony was admissible as part of the res gestae. The mother was the first person to whom the prosecutrix talked after the assault and while she was excited and in a highly nervous state. See Castillo v. State, 31 Tex. Cr. R. 145; Conger v. State, 63 Tex. Cr. R. 312.

Bill No. 18 is clearly without merit and we do not deem it necessary to enter upon an extended discussion thereof.

Bills of Exception Nos. 19 and 20 complain of the cross-examination of appellant's witnesses who had testified on direct examination as to his general good reputation as a law-abiding citizen. The District Attorney, on cross-examination, inquired of the witnesses if they had heard that prior to July 22, 1944, (the time of the commission of the offense), appellant had been charged with shop-lifting and stealing gloves from the Chicago Store; whether they had heard that he had been charged with breaking into the O.P.A. office; whether they had heard that he broke into a car, stole a Cristmas package and took it into the country; whether prior to the commission of the offense they had heard that he had broken into a filling station and taken some gasoline; whether they had heard that he was charged with burning a church in Delta County; whether they had heard that he had been charged with setting fire to a school house. To all of which appellant objected on the ground that this occurred while the defendant was still a juvenile and was violative of the juvenile statute. We fail to see any merit in the objection. The witnesses had testified to his good reputation in support of his plea for a suspension of sentence. Consequently the State had a right to inquire of them relative to these matters for the purpose of testing their sincerity as well as their knowledge relative to his general reputation as a peaceable and law-abiding citizen. See Schroeder v. State, 154 S. W. (2d) 480.

Bills of Exception Nos. 21 and 22 complain of a hypothetical question propounded to Dr. Whitten. The question was based on testimony previously given by other witnesses. This was a proper subject of inquiry under the facts disclosed by the record. There was no question raised as to the doctor's qualification to express an opinion relative to the hypothetical question propounded. This objection was that the question did not embrace all the evidence upon which the State sought to elicit an expression of an opinion by the witness. The bill discloses that the question did embrace all the evidence on the subject.

Bill No. 23 complains of the testimony given by Ruby Clark to the effect that she had never at any time seen an act of indiscretion on the part of Violet Lou Bangs. The court qualified the bill and in his qualification states that after the witness had testified that the prosecutrix had worked for sometime in a cafe belonging to the witness and her husband, and after defendant had elicited testimony from her that there was considerable

drinking of intoxicating liquor in said cafe, that affrays had occurred there, that fondling and flirting had occurred among the young people who congregated there, that the cafe was a "hangout" for soldiers and civilians, that these girls waited on soldiers and civilians and talked to them, that on redirect examination she stated that the girls working in the cafe would speak to the soldiers and civilians but that she had never seen an act of indiscretion on the part of the prosecutrix. It is apparent from the bill that appellant undertook to show that the cafe where the prosecutrix had worked was a place where drinking, carousing, flirting and fondling took place between the soldiers, civilians and the girls who worked there, from which he sought to convey the idea to the jury that the prosecutrix was of unchaste character prior to the commission of the offense. We think that the testimony was admissible to rebut such implication by showing that during the time the prosecutrix worked at the cafe the witness had not observed one act of indiscretion upon her part. This bill is qualified quite at length by the trial court who states in his qualification, among other things, that appellant called Jim Thompson, as a witness, who testified to his own conduct, as well as that of others, when visiting the cafe, as not being conductive to good morals. On cross-examination, this witness testified that at no time did he ever see an act of indiscretion on the part of the prosecutrix. It will thus be noted that testimony was given by this witness without objection which was similar to that to which he objected. It is now the established rule in this state that when testimony which is similar to that objected to is introduced without objection, no reversible error is shown. See Weaver v. State, 165 S. W. (2d) 106; Bussey v. State, 181 S. W. (2d) 94; Williams v. State, 182 S. W. (2d) 715, and cases there cited.

Appellant, in due time, addressed some fifty-nine objections to the court's main charge. We have examined the charge in the light of the objections addressed thereto and reached the conclusion that the charge is a fair and adequate application of the law to the facts and is not subject to the objections. We therefore overrule his contention.

From what we have said, it follows that the judgment of the trial court should be affirmed, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant directs our attention to an error in our original opinion where we disposed of his complaint at the overruling of his application for continuance on the ground that the application contained no averment that the evidence sought from the absent witnesses could not be procured from any other source.

The bill of exception shows that appellant filed a first application for continuance on September 4, 1944. Continuance was denied, but postponement was granted to September 18, 1944, at which time another application for continuance was presented. This was the second application. It did contain the averment that the evidence of the absent witnesses could not be procured from any other source. Continuance was again denied, but further postponement was granted until September 24, 1944. On the latter date appellant filed no formal application for continuance, but renewed his second averring therein as follows: "He here now presents and refiles his application for a continuance of this case with the same provisions, stipulations and grounds therein set forth, and here represents to the court that all of the reasons therein stated exists in the same manner and extent as when said application was originally filed, except as to Paragraphs 14 and 15 which related to the witnesses, Mrs. Howard Dawson and Mrs. Pat Banks, and here makes and renews said application in the same manner as originally filed in this case of this date."

Under our former holdings this might properly be regarded as a third application. It did not contain the averment that the evidence could not be secured from any other source, and that was in our mind when the original opinion was released. However, under the circumstances stated we have concluded that the action of the trial court in overruling the renewed application should be considered. A review of the record reflects that appellant proved by other witnesses every fact he claims could have been proved by the absent witnesses except his claim that Aubrey Williams, Leroy Piner, Jimmie Yarbrough and J. B. Hedrick would have testified that they had prior acts of carnal intercourse with prosecutrix. All of the parties named were soldiers in the armed forces of the United States. None is shown to have been within the State of Texas, and that appellant expected to be able to procure their testimony at the next term of court has no substantial basis. The court's action in denying

the continuance may be upheld on various grounds. It was overwhelmingly shown that prosecutrix was under 15 years of age at the time of the alleged offense. Therefore, if the soldiers had been present and had testified as claimed, it would not have presented any defense for appellant's acts, and their testimony, if as claimed, would not likely have brought about a different result. Again, if the absent soldiers had previously had carnal intercourse with prosecutrix with her consent, the acts would make them guilty of rape. They could not have been forced to testify to such act if it would incriminate themselves, unless they had waived their constitutional right to refrain from so testifying. It would be highly speculative to indulge a presumption that they would have waived their constitutional guarantee.

If the court had granted a continuance because of the absence of the soldier witnesses the trial could in all probability have been delayed indefinitely. In Williams v. State, 168 S. W. (2d) 261, we held that where witnesses were in the Army or Navy of the United States, beyond the jurisdiction of the court, and perhaps on foreign soil, the court was not required to continue the case.

Appellant showed in his application that he undertook to take the depositions of Leroy Piner and Jimmie Yarbrough; that the District Attorney waived time and a commission and agreed that the depositions might be taken immediately. The record discloses that the depositions were forwarded to the County Clerk of Burlington County, Mount Holly, New York. Upon receipt of the interrogatories the clerk wrote to the Clerk of the District Court of Hopkins County, where the case was pending, the following letter, on September 15, 1944.

"Dear Sir:

"We have received your request for depositions for Jamie Yarborough and LeRoy Piner, but we do not know where to locate the same.

"If you can furnish addresses, we will secure these depositions for you and forward them.

"Yours very truly,
"Palmer L. Adams, County Clerk,
"By (Signed) Clovis G. Wright, Deputy."

Appellant made no further showing what steps he took to locate these witnesses.

The fact that the prosecutrix weighed approximately 130 pounds was proven by her testimony, as well as by that of her mother. The fact that many soldiers would come from Paris and Greenville to Cooper on week-ends; that they would congregate at Jasper & Rudy's Cafe; that considerable drinking was indulged in; that argument, fussing and fighting occurred about the cafe during the time that the prosecutrix worked there, was proved by many witnesses. Consequently, the testimony of the absent witnesses relating to such matters would have been cumulative. The trial court was justified in overruling the application under the circumstances.

The motion for rehearing is overruled.