CONNIE WILKINS, JR. *v.* STATE OF MARYLAND

[No. 97, September Term, 1967.]

*Decided June 10, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Sherman W. West* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Howard S. Chasanow, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The Appellant, Connie Wilkins, Jr., was convicted of grand larceny by a jury in the Circuit Court for Prince George's County and sentenced by Judge Perry G. Bowen, the presiding judge, to a term of ten years in the Maryland Penitentiary.

In this appeal, he raises five issues:

    I. Did the lower court lack jurisdiction to try the Appellant since he was brought into the State for trial without the benefit of extradition proceedings?

II. Was he denied his right to a speedy trial?

III. Was it reversible error to permit amendment of the indictment, prior to trial, in order to show the true owner of the stolen goods?

IV. Did the State fail to prove the value of the goods stolen?

V. Did the State fail to prove that the Appellant was in possession of the stolen goods and, for this reason, was the verdict against the weight of the evidence and not supported by the evidence?

The record indicates that on June 6, 1965, shortly after 11:00 P.M., William Dobbins, a checker for the Interstate Systems Company, Inc. observed three men in a panel truck parked in the company's storage yard. Realizing that their presence was unauthorized, he drove out of the yard to report their presence to a police officer, and in doing so noticed that they drove out behind him. Almost immediately he encountered Officer Gross, a Prince George's County Police Officer, and requested him to stop the panel truck. He then returned to the storage yard and found that the back of a trailer-truck, "had been cut off and whiskey had been taken from it."

Officer Gross testified that he was in a cruise car when requested by Mr. Dobbins to stop the panel truck; that he observed it proceeding without lights and as he endeavored to overtake it, the right hand door opened and three shots were fired at him. He advised his dispatcher by radio what was happening and continued to pursue the truck which attained speeds varying between fifty and seventy-five miles per hour. As he got closer to the truck, again he was fired at from the passenger side of the truck. Shortly thereafter, the truck hit several road construction barriers, the engine hood flew up, the truck jumped the center strip and proceeded southbound in the northbound lane, struck a car and went over an embankment. The driver jumped out and ran. He was pursued and apprehended by Officer Gross. During the course of the chase, according to the officer, he was fired at some fifteen times.

Officer Fox testified that he heard over his cruise car radio Officer Gross' call to the dispatcher; that he was in the area of the chase; that he saw the truck and heard the shots; that

he immediately started pursuit and when the truck went over the embankment, he observed a heavy set male, whom he identified as the Appellant, jump from the right hand side and run. He gave chase, apprehended him and observed that he was injured about the head. The Appellant told the officer "he got hit by the truck."

Another Officer who was driving a patrol wagon in the area arrived on the scene as the panel truck came to rest at the bottom of the embankment; saw three men "bail out of the truck"; watched them being chased by the other officers on the scene; and after they were apprehended he placed "all three," including the Appellant, in the patrol wagon. The Officer identified photographs of the panel truck showing cases of whiskey and a sledge hammer in the rear interior, the windshield which was broken out, and several bullet holes in the rear door and fender.

The terminal manager took the stand and identified the five cartons of brand name whiskey found in the panel truck as the cartons which had been taken from the company's trailer-truck and, over objection, was permitted to give the total value of the whiskey taken as being in excess of $200.

## I.

The Appellant was brought into Maryland for the trial below from the District of Columbia Reformatory at Lorton, Virginia (where he was serving a five to fifteen year sentence) under a Writ of Habeas Corpus Ad Prosequendum. He contends that both Maryland and the District of Columbia had enacted the Uniform Criminal Extradition Act (Md. Code, Art. 40, Secs. 16-43) and under that Act "No one found in another State may be tried for a crime in Maryland unless he has been properly brought into the State by, or after waiver of, extradition." This argument, however, overlooks Section 41 of the Act, which provides:

"Nothing in this subtitle contained shall be deemed to constitute a waiver by this State of its right, power or privilege to try such demanded person for crime committed within this State, or of its right, power or privilege to regain custody of such person by extradi-

tion proceedings or otherwise for the purpose of trial, sentence or punishment for any crime committed within this State, nor shall any proceedings had under this subtitle which result in, or fail to result in, extradition be deemed a waiver by this State of any of its rights, privileges or jurisdiction in any way whatsoever."

Moreover, under Section 4085 of Title 18, U. S. C. A., a federal prisoner may be transferred with the consent of the Attorney General of the United States to a State court for trial of an offense against the laws of that state, which, apparently, was the procedure followed in this case. Even in the absence of statute, the Attorney General has the authority to transfer a federal prisoner, over his objection, to a State court for trial on a State indictment as a matter of comity between sovereigns. *Ponzi v. Fessenden,* 258 U. S. 254, 261. Thus, we find no merit in the Appellant's contention that the lower court lacked jurisdiction to try him because he was not extradicted in accordance with the Uniform Criminal Extradition Act.

## II.

Likewise, we find no merit in the Appellant's contention that he was denied his right to a speedy trial. The record indicates that he was indicted on June 7, 1966. He was arraigned on January 9, 1967, and his trial took place on March 9, 1967. At his arraignment, the Appellant, *pro se,* orally raised the question of lack of a speedy trial for the first time. When the court denied his Motion to Dismiss the Indictment, without prejudice to his raising the issue of lack of a speedy trial after the appointment of counsel, the Appellant immediately requested the court to delay the trial of his case until his pending appeal of a criminal conviction in the District of Columbia had been decided by the appellate court. The lower court denied this request. After the appointment of counsel, lack of a speedy trial was never mentioned until the contention was raised in this appeal.

In *Lawless v. State,* 3 Md. App. 652, this Court held that even where the right to a speedy trial has accrued to an accused, he may waive it by failing to demand it, or, having de-

manded it, he may waive it by his conduct thereafter. Here, the Appellant waited until his arraignment on January 9, 1967, to raise the issue and when the issue was decided against him, he promptly requested that his trial be postponed. If it be assumed, *arguendo,* that the right to a speedy trial had accrued to the Appellant, it is clear that his conduct subsequent thereto constituted an effective waiver.[1]

### III.

We find no error by the lower court in permitting the State to amend the indictment, prior to trial, to show that the true owner of the goods stolen was Interstate Systems Co., Inc., rather than Robert J. Booth (its terminal manager) as originally alleged. In *Corbin v. State,* 237 Md. 486, the Court of Appeals approved a similar amendment in a case involving, as here, grand larceny, since "changing the name of the owner of the property constituting the subject matter of the crime charged was a change in form and not substance" and, therefore, it was authorized by Maryland Rule 714.

### IV.

The Appellant properly asserts that to sustain a conviction of grand larceny, the State has the burden of showing that the goods which were the subject of the larceny had a market value of $100 or more. *Mercer v. State,* 237 Md. 479. He contends that the State failed to meet this burden because there was introduced no competent evidence to show the value of the stolen cartons of whiskey. We disagree.

Robert Booth, the terminal manager, testified that he had purchased whiskey "a good many times"; that he was "familiar with the value of liquor"; and that he was "familiar with the prices" of the brand of whiskey which was the subject of the larceny. On the basis of this testimony, which was elicited both on direct examination and cross-examination by the defense, the lower court was of the opinion that he was qualified to testify

---

1. In *Kelly v. State,* 2 Md. App. 730, we held that Kelly, who was indicted at the same time as the Appellant for the same crime, was not denied a speedy trial, although his demand therefor was made in July 1966, (six months before the Appellant made his demand) and his trial did not take place until March 9, 1967.

that the total value of the stolen whiskey was $234.02. "Questions in regard to the qualifications of an alleged expert witness are largely in the discretion of the trial court, and the court's determination of whether the witness is qualified will only be disturbed on appeal if there has been a clear showing of abuse of the trial court's discretion." *M. A. Realty Co. v. State Roads Comm'n,* 247 Md. 522; *Sherrod v. State,* 1 Md. App. 433, 438; 2 Wharton's *Criminal Evidence,* Sec. 506 (12th ed.). We find no such showing of abuse of the lower court's discretion and, accordingly, we find no merit in the Appellant's contention that the value of the stolen goods was not established.

## V.

The Appellant finally contends that the State failed to prove that he was in possession of the stolen goods and, accordingly, the verdict of the jury was against the weight of the evidence and not supported by the evidence. In a case tried by the lower court before a jury, this Court does not inquire into and measure the weight of the evidence. Our function in reviewing the evidence in a jury case is only to determine whether there is any relevant evidence which could properly sustain the conviction. In order to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence, it is necessary that there be no legally sufficient evidence, or inferences drawable therefrom, upon which the jury could find an accused guilty beyond a reasonable doubt. *Hott v. State,* 3 Md. App. 298, 304 and 308; *Tillery v. State,* 3 Md. App. 142; *Willis v. State,* 2 Md. App. 662, 664, 665.

It is apparent from the summary of facts set forth earlier in this opinion that the Appellant was positively identified as the individual who fled from the right hand side of the panel truck which was involved in the high speed chase from the scene of the larceny. There was evidence that fifteen shots were fired at one of the officers from the right hand side of the truck; and photographs were introduced showing the cartons of whiskey and a sledge hammer in the rear of the truck. Under the circumstances, we find no merit in the contention that the State failed to prove that the Appellant was in possession of stolen goods. Under the rule that exclusive possession of re-

cently stolen goods, unexplained, gives rise to an inference that the possessor is the thief, the term "possession" does not necessarily require actual manual possession by the accused as long as he had a measure of control and dominion over the stolen goods. *Gamble v. State,* 2 Md. App. 271, 275. Nor does it mean that the possession cannot be shared with others. *Bury v. State,* 2 Md. App. 674, 677-678. We are of the opinion that there was ample evidence to sustain the jury's verdict.

*Judgment affirmed.*