ROBERT JASPER RODGERS *v.* STATE
OF MARYLAND

[No. 146, September Term, 1967.]

408

*Decided June 21, 1968.*

The cause was argued before MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

*Morris Lee Kaplan* for appellant.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Alfred J. O'Ferrall, III, Assistant Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Howard L. Cardin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The Appellant was convicted of rape and common-law assault by a jury in the Criminal Court of Baltimore and sentenced to twenty years' imprisonment on the rape conviction and the sentence was suspended on the assault conviction.

Janice, the victim of the rape, was eleven years old and a student in the fifth grade. She testified that on October 7, 1966, at approximately 5:30 P.M. she was playing near a young friend's house. Peggy, the young friend, asked her to come into her house and there she saw the Appellant sitting in the living room. He then left the house and Janice departed a few minutes later to return to her home. She was immediately accosted by the Appellant who was standing by his car which was parked in front of the house. He forced her into the car and, according to Janice, drove first to a parking lot near Park Heights Avenue and Druid Hill Drive and then to Cahill Park where, as she stated, "he pulled up my skirt, and then he pulled my underwear over to the side, and he stuck his penis in my vagina." As a preliminary to the attack, he placed a four inch razor near her neck and told her he had already "killed two little girls." She stated that the Appellant was wearing a uniform with the words "Park Circle written on it * * *." She described the car he was driving as a blue and white, four door sedan and she unsuccessfully attempted to take down the license tag number by writing it on her leg. She gave the police two possible numbers but both were to vehicles owned by individuals who could not have been involved. She identified the Appellant in

a police lineup; was unable to identify him at a preliminary hearing; and identified him at the trial, after extensive cross examination, where she said, "I'm sure it's the man."

Peggy testified that the Appellant came to her home in the late afternoon of the day in question and when told that her father was not at home, he asked if he could wait for him. Shortly thereafter the Appellant grabbed her, put a knife to her throat and ordered her to bring Janice into the house. After Janice came into her house, the Appellant immediately left, saying to Peggy, "tell your father that Mr. John—No, Mr. Johnson was here." Shortly thereafter Janice left and was told by Peggy to be careful. Peggy then saw the Appellant "waiting outside with his car door open, and he grabbed Janice." Peggy testified that she had seen the Appellant before since he had worked on her father's car but she did not know his name. She failed to identify the Appellant at the lineup. When asked, "Why?" she stated: "Because I was afraid of him." Likewise, she did not identify him at the preliminary hearing. However, she positively identified him at the trial and replied in the affirmative when asked if the Appellant was the man in her house who held a knife to her throat and who had forced Janice into his car.

The Appellant testified that he did work for Park Circle Motors; that he owned a white 1958 Cadillac; that he left work on the day in question at 5:05 P.M. in the company of several fellow employees; stopped and had some drinks and was home by 6:20 P.M. where he remained with his wife and six foster children, the remainder of the evening. His wife corroborated his testimony in this regard.

A representative of Park Circle Motors testified that the uniform worn by the employees displayed the Chevrolet emblem and name and the name of the employee, but not the name Park Circle Motors.

In this appeal, it is first contended that the lower court erred in refusing to submit the following question on *voir dire*: "Do you believe that the members of the Negro race have a greater inclination to commit sex crimes than members of other races?"

We find this contention to be without merit. The lower court did propound the following question to the prospective jurors:

"Do any of you have any prejudices against members of the Negro race, which would prohibit your rendering a fair, just, and I will add, impartial decision in the case now being called which involves a member of the Negro race?"

The nature and extent of the *voir dire* examination rest in the sound determination of the trial court. *Culver v. State,* 1 Md. App. 406, 417. Its purpose is to ascertain whether the prospective jurors are free from bias or prejudice and capable of making objective and impartial findings. *McIntyre and Davis v. State,* 1 Md. App. 586. In view of the question propounded by the lower court, we find no abuse of its discretion in refusing to submit the question proposed by the Appellant.

Likewise, we find no merit in the Appellant's contention that two members should have been eliminated from the jury for cause since they had previously served on a past grand jury. They were not members of the grand jury which returned the indictment of the Appellant and they were asked whether an indictment by the grand jury raised a presumption of guilt in their minds or amounted to evidence of guilt. The Appellant cites no authority, and we are unaware of any, which supports the view that these jurors, under the circumstances, should have been disqualified for cause. For the same reason, we find no merit in his contention that a third member of the jury should have been disqualified because he was related to a police officer (who had no connection with the Appellant's case). *Borman v. State,* 1 Md. App. 276.

The Appellant next contends that Janice, the eleven year old rape victim, was not properly qualified to testify. The record indicates that upon inquiry by the State's Attorney, she testified that she was taught in church "not to tell a lie"; that people who tell lies "get punished"; that she was going to tell the truth; and when asked on cross-examination by defense counsel what the State's Attorney had told her, she replied, "he told me just to tell the truth." The legal capacity of children to testify is within the sound discretion of the trial court. *Horsey v.*

*State,* 225 Md. 80; *Robert v. State,* 220 Md. 159; *Saldiveri v. State,* 217 Md. 412; *Reckard v. State,* 2 Md. App. 312. We see no abuse of discretion by the trial judge in his finding that the victim was qualified to testify.

The Appellant also contends that the lower court erred in over-ruling his objection to testimony relative to Janice's statement at the time of the lineup. He is evidently referring to Peggy's statement since there is nothing in the record relative to a statement by Janice at the lineup. Over Appellant's objection, the State was permitted to ask a police officer what Peggy stated when she was asked by the police why she didn't pick the Appellant out of the lineup. The officer was permitted to answer: "She said 'cause I was scared.' " It is urged that this was hearsay evidence and therefore inadmissible.

The victim, Peggy, had not been asked by the State's Attorney on direct examination anything relating to the lineup at which she failed to identify the Appellant. However, on cross-examination by defense counsel she was asked whether she attended a lineup containing the Appellant and had been able to identify him. She answered: "No, I was scared." Later in the trial the defense called Sergeant Flynn of the Baltimore City Police Department and interrogated him regarding a lineup containing a man named Johnson. The officer testified that both victims failed to identify Johnson as the perpetrator of the crimes. The officer was then asked about the lineup containing the Appellant and particularly whether the Appellant was requested to speak and what he was wearing. The State's Attorney, on cross-examination, asked the officer whether he had taken a statement from Peggy with reference to her failure to identify the Appellant in the lineup and the officer was permitted to answer: "She said 'cause I was scared.' " It is this testimony that the Appellant argues is hearsay evidence and that its admission constitutes reversible error. We disagree.

The victim was in court and the statement as to the reason she failed to identify the Appellant was brought out, not by the State, but by the Appellant so that we do not have a situation where the State was producing an out of court statement of the victim, through a third party, without any opportunity on the part of the defense to cross-examine the victim. Moreover,

the state did not produce the police officer. The defense did—and questioned him about the Rodgers lineup. Under these circumstances, we are not persuaded that this case should be reversed on the basis that the officer's testimony violated the Hearsay Rule.[1] Assuming, without deciding, that the testimony was hearsay, it was, nevertheless, merely cumulative. *Lewis v. State,* 2 Md. App. 318.

It is next contended that prejudicial error was committed by the failure of the trial judge to give the following instruction: "That no class of testimony is more uncertain and less to be relied on than that as to identity, and where great doubt is cast upon the witnesses themselves, the jury should be cautious in considering it." The Court did, however, advise the jury that the testimony relating to the identity of the Appellant "was limited to two young girls" and he added: "However, you must consider their age, compare their normal life and family, in considering what weight you should give to their testimony as to the identity of this defendant, and you should give every care in scrutinizing the testimony of those victims." Under the circumstances, we find no error in the lower court's refusal to grant the requested instruction.

The Appellant also maintains that since there was no legally sufficient evidence to sustain the conviction, his Motion for Judgment of Acquittal should have been granted. He points out that although the rape victim identified the Appellant in a lineup and at the trial she did not identify him at a preliminary hearing; that although the assault victim identified him at the trial, she did not identify him in the lineup or positively identify him at the preliminary hearing; that although both victims testified that the name "Park Circle" was on the Appellant's uniform, a representative of the company testified that the uniforms did not contain that name; that the description given by the victim of the Appellant's automobile was not that of the car he owned; and that the examining physician was told by the rape victim that the man said his name was Johnson. These, of

---

1. In Maryland, unlike most states, prior consistent statements have been held admissible for the purpose of rehabilitating an impeached witness. The cases are collected and discussed in Dyer, *Extrajudicial Identification,* XIX Md. L. R. 200 (1959).

course, are arguments which undoubtedly were made to the jury by defense counsel and, however persuasive some of them may appear, it is obvious that they did not convince the jury of the Appellant's innocence. They are, nevertheless, arguments which go to the weight rather than the sufficiency of the evidence. As we said in *Culver v. State,* 1 Md. App. 406, 409:

> "When a case is tried by a jury, and the point is properly raised, as it was here by the latter motion, this Court determines the sufficiency of the evidence to take the case to the jury, but does not weigh the evidence presented to the jury. *Ramsey v. State,* 239 Md. 561 (1965). In order for us to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence it is necessary to show that there was no legally sufficient evidence, or inferences drawable therefrom, on which the jury could find a defendant guilty beyond a reasonable doubt. *Royal v. State,* 236 Md. 443 (1964). So the scope of our review is not to determine whether the State has proved its case beyond a reasonable doubt, but whether there was any relevant evidence properly before the jury which would sustain the conviction. *Tull v. State,* 230 Md. 596 (1963); *Fowler v. State,* 237 Md. 508 (1965)."

In the case at bar, both victims positively identified the Appellant at the trial. The Court of Appeals of Maryland and this Court have repeatedly held that the testimony of a single eye witness to a crime, if believed, is legally sufficient to support a conviction. *Turner v. State,* 242 Md. 408; *Wesbecker v. State,* 240 Md. 41; *Hutchinson v. State,* 1 Md. App. 362, 367; *Crumb v. State,* 1 Md. App. 98, 103. The sufficiency of the identification of an accused is primarily a matter for the trier of facts and any lack of positiveness would affect the weight of the evidence and the credibility of the witnesses, which, in this case, were for the jury's determination. *Logan v. State,* 1 Md. App. 213, 216; *Hursey, Jr. v. State,* 233 Md. 243, 244.

The Appellant's complaint that the lineup was unfairly and prejudicially conducted is not properly before us since the testimony regarding the identification at the lineup came in with-

out objection. In any event, we cannot ascertain from the record before us whether the lineup was conducted in a constitutionally impermissible manner (e.g. the rationale in *Simmons v. United States,* 88 S. Ct. 967), although it does indicate that no one else in the lineup "was wearing the type of uniform" that the Appellant was wearing at the time. Such an inquiry may be appropriate upon an evidentiary hearing under the Uniform Post Conviction Procedure Act.

*Judgments affirmed.*