JOHN ROBERT MELIA and LLOYD CECIL SHELHORSE *v.* STATE OF MARYLAND

[No. 30, September Term, 1968.]

*Decided November 13, 1968.*

The cause was argued before MURPHY, C.J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*Alger Y. Barbee (John S. McInerney* on brief) for appellants.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and

*Page J. Digman, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellants were jointly indicted and jointly tried by the court in the Circuit Court for Montgomery County. Each was convicted of storehouse breaking with intent to commit a felony (1st count) and petit larceny (3rd count). Concurrent sentences of 5 years on the 1st count and 9 months on the 3rd count were imposed on Melia and concurrent sentences of 4 years on the 1st count and 9 months on the 3rd count were imposed on Shelhorse.

On appeal from the judgments the contentions of the appellants go to the sufficiency of the evidence.

The 1st count of the indictment charged that the appellants did break "the storehouse, the premises of Carroll-James Co., Inc., a corporation, located at 8522 Georgia Avenue, Silver Spring, Montgomery County, Maryland" with intent to commit a certain felony, to wit, to steal goods "in excess of the value of one hundred dollars." [1] The 3rd count of the indictment charged that the appellants did steal "one reel of 4/0 electrical wire, being of the value of twenty-five dollars, current money; fifteen feet of T-W 12 gauge wire, being of the value of two dollars, current money; three rolls of copper refrigeration tubing, each roll of tubing being of the value of ten dollars, current money * * * of the goods of Carroll-James Co., Inc., a corporation."

Two witnesses testified in behalf of the State — Herbert Shields, an eyewitness to the crime and Harry A. Carroll, Jr., an officer of the businesses occupying the storehouse.[2] It is clear

---

**1.** Md. Code, (1967 Repl. Vol.), Art. 27, § 32 proscribes, in part, the breaking of a storehouse with intent to commit a felony or with intent to steal goods of the value of $100 or more. Larceny to the value of $100 or upwards is a felony, Code, supra, Art. 27, § 340; the stealing of goods under the value of $100 is a misdemeanor, § 341.

**2.** A police officer called by the State was not permitted to testify over objection for the reason that his name was not listed in an answer to a motion for discovery filed by Shelhorse.

from the testimony of Carroll that there was no corporation by the name of "Carroll-James Co., Inc." There were two corporations in existence at the time of the crime, "C. & J. Refrigeration and Air Conditioning Company, Inc." and "Carroll Electric Company, Inc." He was secretary-treasurer of the former and president of the latter. C. & J. Refrigeration and Air Conditioning Company, Inc. traded under the name "Carroll-James." The storehouse basement — "It's next to the Tastee Diner * * * It's the 8500 block, I believe * * * of Georgia Avenue * * * in Montgomery County"—was rented by "C. & J., Carroll-James" and owned by "Mr. Warner." The goods in the storehouse were owned by both corporations and had a value of between $1800 and $2000. He was called by the police about 3:00—4:00 A.M. on 25 March 1967 and went to the storehouse. The police on the scene told him "somebody had busted into the place * * * I looked at the door and there was a roll of cable outside the front of the door and the door had been busted in and the panel, one of the panels had been knocked out * * * where the lock was fastened onto the door was broken away from the door." He had been at the premises between 1:00 P.M. and 3:00 P.M. on 24 March, unlocked the door when he went in and locked it when he left. The door was not damaged at that time. He had never at any time given Melia or Shelhorse permission to enter the storehouse; he had never seen them before the breaking. The cable he saw "was approximately one hundred feet of No. 4 TH or RHW insulation wire on a reel." Its value was "between sixty and seventy dollars." It was the property of Carroll-Electric Company, Inc. An inventory taken later disclosed that the only other goods missing was "some copper tubing." He did not know its value.

Herbert Shields testified that he worked at the Tastee Diner next door to the storehouse. On 25 March he finished work at 3:40 A.M. and started to wash his car at the rear of the Diner before going home. The area was well lighted and he saw a 'man coming out of the basement door of the storehouse—"the electric place weerh they kept the equipment"—carrying some electric wires. When the man saw Shields "he put wires in the trunk" of a car and slammed the lid. Shields saw another man standing by the car. Both got in the car and drove away. The

car lights were not turned on. Shields called the police. When the police arrived he went to the storehouse with them. The door was open and the lock broken off. He saw some electrical wires on the ground. At the trial Shields identified Melia and Shelhorse as the men he had seen. He said Melia got in the driver's side of the car and Shelhorse in the passenger side. On cross-examination he said the car was a 1964 or 1965 White Ford four door with Maryland tags. He gave the police some of the tag numbers. He recognized the men because "they come in the Diner all the time." He did not know their names except that Shelhorse was called "Peewee."

At the close of the evidence offered by the State, the appellants moved for a judgment of acquittal "on each and every count, on the grounds of fatal variance." After argument by the State and the defense the State moved to amend the indictment and after further argument the court granted the motion to amend, over objection, and denied the motion for judgment of acquittal. The proposed amendment was not clearly articulated [3] but we are satisfied from the record that the amendment ultimately made was to substitute the name of each of the two corporations for "Carroll-James Co., Inc." wherever it appeared in the indictment.[4]

---

3. The State first moved "to correct by interlineation that the premises were owned by C. & J. Corporation, Incorporated; rather, the property is owned by C. & J. Corporation, Incorporated, and the Carroll Electric Company, Incorporated." Later the motion was corrected to read, "The storehouses, the premises of C. & J. Corporation, Incorporated and the Carroll Electric Company, Incorporated," the State saying that was the motion "on all counts." The correct name of the first corporation as given by Carroll was "C. & J. Refrigeration and Air Conditioning Company, Inc."

4. After extensive argument during which both the State and defense referred to the corporations under a variety of names the court said, "The Court in making its ruling construed the amendment to mean nothing more than a substitution of those two corporate names for Carroll-James Co., Inc., wherever it later appeared in the indictment." We think it clear that the court intended that the corporate names substituted be those names as given by Carroll during his testimony as the correct corporate names. In any event it is stated in 52 C.J.S. § 99c(1), Larceny, p. 918:

"If the ownership is laid in a corporation under what

On appeal the appellants do not contend in their brief that the granting of the motion to amend was error, assuming incorrectly that the court did not grant the motion. In oral argument it was conceded that the motion was granted. We find no error in the granting of the motion to amend. Md. Rules, 714; *Corbin v. State*, 237 Md. 486; *Wilkins v. State*, 4 Md. App. 334. As amended, therefore, the first count of the indictment charged that the storehouse broken was the premises of C. & J. Refrigeration and Air Conditioning Company, Inc. and Carroll Electric Company, Inc. and the third count charged that the goods stolen were the properties of those two corporations.

## THE LARCENY CONVICTION

Simple larceny at common law is the taking and carrying away of the personal goods of another of any value from any place, with a felonious intent to steal such goods. *Clark and Marshall, A Treatise on the Law of Crimes* (6th Ed.) § 12.00, p. 706.[5] Since larceny is a crime against possession, *Brown v.*

---

purports to be its corporate name and the proof shows the owner to be a corporation of a different name, and there is no evidence connecting them and showing their identity, the variance is fatal. However, if it is established beyond a reasonable doubt that the corporation proved on the trial to be the owner is the same corporation as that in which the ownership is laid in the indictment, the fact that the name stated in the indictment differs from the corporate name proved will not usually be considered a fatal variance, especially where the name stated in the indictment is the one under which it is generally known, or by which accused knows and will recognize it, or, although misspelled, has the same sound as that of the true name."

5. Larceny is distinguished as simple—unaccompanied by any circumstance of aggravation — or compound — when committed under circumstances of aggravation. Hochheimer's *Criminal Law* (1st Ed.) § 691, p. 409. The English law, as a result of an early statute, classified simple larceny as either grand larceny or petit larceny (now frequently written petty larceny). Statute of Westminister, 3 Ed. 1 c. 15 (1275). Both grand larceny and petty larceny were felonies but the punishment for petit larceny was less severe. The punishment for grand larceny was death and forfeiture of goods, subject to benefit of clergy. The punishment for petit larceny was forfeiture of goods and whipping, or some corporal pun-

*State,* 236 Md. 505; *Wharton's Criminal Law and Procedure* (Anderson) § 464, an allegation of the ownership of the property alleged to have been stolen is a necessary requisite in a larceny indictment and proof of ownership as laid in the indictment is an essential factor to justify a conviction, *Anderson v. State,* 3 Md. App. 85. It is well settled that ownership may be laid in the real owner—general interest—or in the person in whose possession the goods were at the time of theft—special interest. *Peircy v. State,* 239 Md. 601, 603. And it is not necessary to state the nature of the interest; the property may be described as the goods of the owner or as the goods of the person having possession. 32 Am. Jur., Larceny, § 114, p. 1067. So an allegation that a person is the owner may be sustained by proof that he has either a general or a special interest. But, as amended, the larceny count alleged that C. & J. Refrigeration and Air Conditioning Company, Inc. and Carroll Electric Company, Inc. were the owners of the goods and the proof showed that only Carroll Electric Company, Inc. was the owner as holding the legal interest.[6] The question is whether this was a fatal variance.

---

ishment less than death. 1 Hale, Pleas of the Crown 530. Under the statute theft was grand larceny where the value of the property exceeded 12 pence, and petit larceny where the value was 12 pence or less. In Maryland, although larceny is not specifically designated by statute as grand or petit, there is a statutory dividing line between felonious and non-felonious larceny. The theft of goods to the value of $100 or upwards is a felony, Code, *supra,* Art. 27, § 341, commonly referred to as grand larceny, and the theft of goods under the value of $100 is a misdemeanor, § 342, commonly referred to as petty larceny. Prior to the Acts of 1952, chapter 18, the dividing line was $25.

6. Of the goods alleged to have been stolen, the proof as to ownership and identity of the goods was sufficient only with regard to the "one real of 4/0 electrical wire," valued at $60 or $70. On a charge of petty larceny if it appears that the goods were of some value, a specific allegation of value need not be sustained as not material to the charge. *Hochheimer, supra,* § 716, pp. 432-433. (For necessity of proof of value as to grand larceny see *Wilkins v. State,* 4 Md. App. 334 and *Lehr v. State,* 2 Md. App. 776.) We think the evidence properly enabled the court to find that this wire was that found outside the storehouse by the broken door. Appellants do not contend on appeal that it was not the goods so described in the indictment and while it was not physically introduced in evidence

If the count be construed as laying the ownership in the two named corporations jointly (although it did not so state), it was not sustained by the proof that the stolen goods belonged to one of them individually nor would it be sustained by proof that separate articles belonged to one of the owners named and the remainder to the other. 52 C.J.S. § 99, Larceny, p. 918.[7] If it was not certain whether the proof would show that the goods were the property of one of the corporations or the other or that one had possession although the other was the owner it would have been proper to allege the ownership in one corporation in one count and in the other corporation in another count of the same indictment, for the purpose of meeting the varying degrees of proof which the testimony might develop. But it was not proper, in one and the same count, to lay the property alleged to have been stolen in more than one corporation,

there was no objection to the testimony describing it. There was no evidence as to the "fifteen feet of T-W 12 gauge wire" valued at $2. Although there was testimony that an inventory disclosed goods described as "some copper tubing" (with no other specificity) was missing, the value of which was unknown to the witness, there was no evidence of ownership of the tubing other than a general statement that the contents of the storehouse "belonged to the Carroll-James Company and the Carroll Electric Company," the contents being described at one point in the witness' testimony as "refrigeration compressors, copper wires, boxes, some lighting fixtures, some refrigerators." We do not believe the evidence was sufficient to identify the tubing alleged to have been stolen or its ownership. "Indictments for larceny and the like are sustained by proof of taking any part of the goods or money averred, provided the punishment is the same, whether more or less is taken." Hochheimer, supra, § 263, p. 167. See 32 Am. Jur., Larceny, § 146, p. 1059. Even though there was testimony that the storehouse was rented by C. & J. Refrigeration and Air Conditioning Company, Inc., under its trade name as Carroll-James, there was no direct evidence that it had possession of the goods and we do not think that a rational inference could be drawn, in the circumstances here, that it had exclusive possession.

7. For a sufficient statement in an indictment as to ownership or possession of property by partners, joint tenants, parceners, tenants in common or trustees, see Md. Code, supra, Art. 27, § 605. The statute is not applicable to the instant case.

because each count must contain such allegations as will enable the trier of facts to find the accused guilty on that count. *Burgess v. State,* 161 Md. 162, 166; 32 Am. Jur. § 113, Larceny, p. 1025. And although it is the rule that the stealing of several articles at the same time belonging to several persons may constitute one offense and be charged in one count, it is necessary that the count allege the ownership of each article, and not just generally that the articles belonged to the several owners. *State v. Warren,* 77 Md. 121.[8] The count in the instant case did not do so.

We hold that there was a variance between the *allegata* and the *probata,* that the variance was material, and that the judgment as to the larceny count must be reversed.

## THE STOREHOUSE BREAKING CONVICTION

As amended, the first count of the indictment charged that the appellants "* * * the storehouse, the premises of C. & J. Refrigeration and Air Conditioning Company, Inc. and Carroll Electric Company, Inc., located at 8522 Georgia Avenue, Silver Spring, Montgomery County, Maryland there situate, unlawfully did break with intent to commit a certain felony there and therein, to wit, with intent then and there certain goods and chattels in excess of the value of one hundred dollars, current money,

---

8. The Court of Appeals said in *Warren* at 122, "And although it is necessary to set out in the indictment the ownership of the property, this the law requires in order that the prisoner may be informed as to the precise nature of the offense charged against him; and further, to enable him to plead a former conviction or acquittal, in bar of a subsequent prosecution for the same offense." It reversed a judgment of the lower court sustaining a demurrer and quashing an indictment containing two counts, in each of which the accused was charged with stealing several sums of money at the same time, belonging to several owners, on the ground of duplicity. The Court of Appeals held that the indictment was proper as the stealing was but one offense. Although it is not clear from the opinion, the record of the case, No. 71, Criminals, November Term, 1892, in the Circuit Court for Montgomery County, discloses that in both counts of the indictment the ownership of each article was separately stated.

in the said storehouse then and there being found, then and there unlawfully to steal, take and carry away; * * *." Evidence adduced was that the premises were rented by "C. & J., Carroll-James," that "Carroll-James" was the trade name of C. & J. Refrigeration and Air Conditioning Company, Inc., and that goods owned by each of the refrigeration company and the electric company were in the storehouse when it was broken. The question is whether, in these circumstances, there was a material variance between the *allegata* and the *probata*.

Code, *supra,* Art. 27, § 32, proscribing the offense here charged, does not expressly provide that the storehouse broken be that of another.[9] But the usual holding is that an indictment for burglary, whether at common law or under a statute, must allege ownership of the building broken. 13 Am. Jur. 2d, § 37, p. 342.[10] The ownership, however, need not be that of the legal title owner. The Court of Appeals said in *Hackley v. State,* 237 Md. 566 at 569:

> "Most, but not all, States require that the ownership of the building burglarized be stated in the indictment and proven so as to negative a right of entry by the accused and to establish identity. See Anno. 169 A.L.R. 887. It is generally held that the ownership alleged and shown need not be that of the legal

9. But if the breaking is with intent to steal personal goods it provides that such goods shall be those "of another."

10. Code, *supra,* Art. 27, § 30(a) designates the crime thereby proscribed (breaking and entering of a dwelling in the nighttime with intent to steal goods of another of any value) as burglary. The offense proscribed by § 30(b) (the breaking of a dwelling house in the daytime with intent to commit murder or felony or steal goods of another of any value), by § 32 (breaking a storehouse in the day or night with intent to commit murder or a felony or to steal goods of another of the value of $100 or upwards), by § 342 (breaking a storehouse with intent to steal goods under the value of $100 or breaking a storehouse and stealing goods under the value of $5), and by § 33 (breaking a storehouse and stealing goods of the value of $5 or upwards) are not designated as burglary but are commonly referred to as statutory burglary.

title holder if another, not the accused, is in lawful possession of the building involved under a special property interest. The propositions set forth in this paragraph are supported by 13 Am.Jur.2d *Burglary* Sec. 37, p. 342 and 4 *Wharton's Criminal Law and Procedure* (Anderson 1957), Sec. 1784, p. 604, and the cases."

And it has been held that the ownership of the building broken into is not an essential element of the crime and need not be proved precisely as alleged. 3 *Underhill, Criminal Evidence* (5th Ed. 1957) § 720, p. 1678 and cases cited in note 83. We think that in the instant case the allegation in the first count of the indictment and the proof were enough to show that the storehouse broken into by the appellants was not theirs, that they had no right to enter it without the permission of the lawful occupier, and enough to identify the building broken into and the personal property therein so as to protect the appellants against a subsequent prosecution for the same offense, which is all that is required. *Sparkman v. State,* 3 Md. App. 527, 531-532. We hold as to the first count that there was no material variance between the *allegata* and the *probata.*

### THE CRIMINAL AGENCY OF THE APPELLANTS

The appellants urge that the testimony of one eyewitness was not legally sufficient "from consideration of its character and weight" and therefore the motions for judgment of acquittal at the close of the evidence offered by the State should have been granted. It appears that the motion then made was "on the grounds of fatal variance" and so argued. But in any event, the appellants thereafter offered evidence and by so doing withdrew the motions. Md. Rules, 755b. At the close of all the evidence motions for judgment of acquittal were again made and denied and the appellants now contend that "upon examination of all the evidence, it was legally insufficient to sustain" the convictions. The thrust of the appellants' argument on the point is that the eyewitness, Shields, may have been mistaken in his identification of the appellants. not only in the light of the

circumstances under which he claimed he saw them at the scene of the crime but in consideration of the evidence offered by them. The eyewitness was exhaustively cross-examined by counsel for each appellant as to what he saw, the time he saw what he described, and the conditions under which he saw it. But there was evidence before the court that Shields saw one of the appellants coming out of the broken premises carrying electric wires which he put in the trunk of a car at the scene, that the other appellant was standing beside the car, that when they became aware of Shields' presence they entered the car and drove away without turning on the car lights, that Shields recognized them because they "come in the Diner (where he was employed) all the time." Shields positively identified them at the trial. There was extensive evidence offered by the appellants to attack the credibility of Shields and to show that they were not present at the scene of the crime. It is firmly established that the identification by a single eyewitness is sufficient. *Rodgers v. State,* 4 Md. App. 407; *Tillery v. State,* 3 Md. App. 142; *Crosby v. State,* 2 Md. App. 578; *Reed v. State,* 1 Md. App. 662. The weight to be given a courtroom identification is a matter for the trial court. *Cox v. State,* 3 Md. App. 136; *Hutchinson v. State,* 1 Md. App. 362. Alibi evidence is to be weighed by the trial judge who is not required to accept its truthfulness, *Logan v. State,* 1 Md. App. 213, nor is he under any obligation to believe the explanations and denials of the accused, *Gunther v. State,* 4 Md. App. 181; *Carwell v. State,* 2 Md. App. 45. The matters now urged by the appellants go to the weight of the evidence and the credibility of the witnesses but they are for the trial judge to determine. *Gibson v. State,* 4 Md. App. 222; *Trout v. State,* 3 Md. App. 259; *Dunlap v. State,* 1 Md. App. 444. We determine whether the court below had sufficient evidence before it from which it could be fairly convinced beyond a reasonable doubt of the defendants' guilt. *Eley v. State,* 4 Md. App. 230; *Howard v. State,* 1 Md. App. 379. We think there was such evidence in the instant case from which the trial court could find both the *corpus delicti* and the criminal agency of the appellants as to the storehouse breaking, which, in view of our holding herein, is the only conviction remaining for consideration. Therefore the judgment of

the trial court thereon was not clearly erroneous and we may not set it aside. Md. Rules, 1086.

> *As to each appellant: Judgment under the first count of the indictment affirmed; judgment under the third count of the indictment reversed and case remanded for a new trial thereon.*