LITTLE *v.* STATE

[No. 147, October Term, 1953.]

*Decided May 24, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Harold E. Naughton,* with whom were *Wagaman and Wagaman,* on the brief, for appellant.

*W. Giles Parker,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, and *Paul M. Fletcher,* State's Attorney for Allegany County on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment and sentence upon the verdict of a jury finding the appellant guilty of accepting bets on horse races and maintaining premises for such purpose. The principal questions raised are as to the correctness of the court's rulings as to the admissibility of the testimony of two members of the State Police Force as to matters observed by them and certain statements made to them. If this testimony was inadmissible, as contended, it is further urged that the remaining evidence was insufficient to convict.

Leonard Little was indicted in Allegany County along with one Edward Capel and Thomas Neff. The case was removed to Washington County and a severance granted. The record shows that the City of Cumberland is a duly incorporated municipality maintaining a police department of its own and having an executive officer called a mayor, a police and fire commissioner, and a chief of police. The testimony shows that on April 25, 1952, John M. Long, the Commissioner of Police of Cumberland, wrote a letter to Col. Munshower, the Superintendent of State Police, requesting that two State Police officers in plain clothes be detailed to make a certain investigation of gambling in Cumberland. The request was granted, and Sergeants Jackson and Smith were assigned to the work in Cumberland. They went

to the poolroom operated by Little on the evening of August 29. Over objection, these officers were permitted to testify that they played several games of pool, and then asked an elderly man, whom they subsequently learned was Edward Capel, about placing a bet on "Ritbred," a horse running that day at Atlantic City. Capel wrote the bet on a slip of paper and accepted $7 from the witnesses. Capel then went to the back of the room, where the proprietor, Little, and other men were standing, and when he returned told them: "I got it up." The witnesses then left the premises. The next day they returned to the pool-room, where they talked to Capel and Little. They asked for their money back, as it appeared that the horse they had bet on had been scratched. Capel said to Little, "These are the men." Little pulled a roll of bills from his pocket and handed $7 to one of the witnesses. The witnesses further testified they then asked Little about placing a bet on "Native Dancer." Little told them to "see that man at the other end of the counter", pointing to him. This man was Thomas Neff. While waiting their turn, they saw Neff accept a bet from another man, but Neff declined to accept a bet they offered. This is all the pertinent testimony relating to the offense charged.

The appellant contends that the court erred in instructing the jury that John W. Long, the Police and Fire Commissioner of Cumberland, had legal authority to request the detailing of State Police to the investigation, and that they were legally detailed and legally on the premises of Little at the time they obtained the evidence referred to. We think the ruling was correct. Code (1951), Art. 88B, Sec. 23, provides that the State Police shall not act within the limits of any incorporated municipality which maintains a police force, except under specified conditions, the only one here applicable being "(3) when requested to act by the chief executive officer of the municipality in question or its chief police officer, * * *."

Section 22 provides that the Superintendent of State Police "may on the request of the chief executive officer or the chief police officer of any local government unit in the State assist such officer in the investigation of the circumstances of any crime, and in the identification, apprehension, and conviction of the perpetrator or perpetrators thereof, * * *." The Charter of Cumberland (1950 ed.) § 18 vests control and supervision of all city departments in the Mayor and City Council, and provides for the designation of one councilman as Police and Fire Commissioner, having in his special charge the enforcement of all police regulations. § 36(a) calls for the establishment of a Police Department, to be composed of a "Chief of Police" and subordinate officers. § 36(m) sets forth the duties of the Chief of Police and states that he shall be the "chief police officer of the said City". Despite the verbal identity of the phrase "chief police officer" as used in the public general law and in the charter, we think that the phrase in Article 88B refers to the ranking official of a local police department regardless of title. While Robert E. Flynn, the Cumberland Chief of Police, testified that he did not make any request, and it is conceded that the Mayor did not, he also testified that Mr. Long was his "immediate superior". There was testimony of a request by Mr. Long and of compliance by Col. Munshower.

But even if the detailing of these officers to the investigation in Cumberland was beyond the legal power of the Superintendent and they were not authorized or deputized to perform police duties there, it would not follow that their testimony was inadmissible. As members of the general public they had a legal right to enter the pool-room to which the public was invited and could testify to what they saw and heard there. *Curreri v. State*, 199 Md. 54, 55 and cases cited.

The appellant contends that the officers' testimony as to Capel's statement to them, "I got it up", is hearsay, made out of the presence of the accused, and hence inadmissible. We think, however, that it was part

of the *res gestae*. The statement did not purport to repeat anything said to Capel by Little, or even to implicate him directly in the transaction. It merely indicated an acceptance of their offer by Capel, either on his own account or for an undisclosed principal. The verbal act of taking a bet, with or without the knowledge or consent of Little, was germane to the charge of maintaining premises for gambling. For this limited purpose it was unecessary to identify the participants. *White v. State,* 204 Md. 442, 104 A. 2d 810; *Alexander v. State,* 198 Md. 395; *Courtney v. State,* 187 Md. 1.

The testimony that Little refunded the money bet, on the following day, is legally sufficient to show that he had knowledge of the previous transaction and personally participated in it. Likewise, the testimony that Little then referred them to Neff, in connection with another proposed bet, and that they saw Neff accept $2 from another man and make notations on a slip, would indicate that bets were being made on the premises and that Little had knowledge of it. Convictions have been sustained on far less evidence of knowledge or participation by a proprietor. *Shelton v. State,* 198 Md. 405, 412; *Alexander v. State, supra.*

*Judgment affirmed, with costs.*