# JOHN F. COOLAHAN v. STATE OF MARYLAND

[No. 98, September Term, 1970.]

*Decided November 10, 1970.*

The cause was argued before MURPHY, C.J., and MORTON and MOYLAN, JJ.

*Bernard F. Goldberg*, with whom were *T. Carroll Brown* and *Cypert O. Whitfill* on the brief, for appellant.

*James L. Bundy, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Edwin H. W. Harlan, Jr., State's Attorney for Harford County, Donald G. Smith, Assistant State's Attorney for Harford County*, and *John J. Lucas* and *Charles E. Foos, III, Assistant State's Attorneys for Baltimore County*, on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The Appellant, Dr. John F. Coolahan, a practicing physician, was convicted in the Circuit Court for Harford County by a jury, presided over by Judge Albert P. Close, of violations of Article 27, Section 277, relating to the unlawful prescription of narcotic drugs.

On this appeal the Appellant raises essentially three issues:

(1) That the indictment upon which he was tried was void for duplicity;

(2) That the trial judge committed reversible error in his instructions to the jury; and

(3) That the evidence was legally insufficient to be permitted to go to the jury.

The Appellant was initially indicted in Baltimore

County on September 23, 1968. On September 30, 1968, an amended indictment was filed. On April 14, 1969, a second amended indictment was filed. The differences between the first amended indictment of September 30, 1968, and the second amended indictment of April 14, 1969, deal with counts and matters not relevant to this appeal. The Appellant was convicted upon each of three counts, all charging the same offense but on the separate days of August 23, August 28 and August 31, 1968, respectively. Each of the counts charges that the Appellant on the date in question "unlawfully did prescribe a certain narcotic drug, to wit: dolophine, a/k/a methadon, in a manner not authorized by the Maryland Uniform Narcotic Drug Act in violation of Art. 27, Sec. 276 to Art. 27, Sec. 306D contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State". Although not a formal part of the indictment, there is appended to each count of the indictment and placed immediately beneath it the parenthetical notation "(Art. 27, Sec. 277 & Sec. 300)". This parenthetical reference to the statute the violation of which is charged represents a regular practice in Baltimore County, in Baltimore City and in several other jurisdictions in this State whereby, as a convenience, the State's Attorney's Office provides a shorthand reference —"a traveler's guide"—through the labyrinthine meanderings of formal verbiage for the benefit of the defense attorney, the Assistant State's Attorney and the judge alike.

Despite this parenthetical and, to be sure, informal guidepost, the Appellant claimed in a pretrial motion to dismiss the indictment that the counts were duplicitous in that they contained the sweeping language "in violation of Art. 27, Sec. 276 to Art. 27, Sec. 306D". The three counts in question were drawn less artfully than they might have been and it is arguable that the verbal phrase "unlawfully did prescribe" could take as its predicate Art. 27, Sec. 285 (a misdemeanor punishable under Art. 27, Sec. 300 (b)), as well as the clearly intended predi-

cate of Art. 27, Sec. 277 (a felony punishable under Art. 27, Sec. 300 (a)).

Article 27, Sec. 285, of the Maryland Uniform Narcotics Drug Act [1] then in effect provided, *inter alia*, that:

> A physician . . . in good faith and in the course of his professional practice only, may prescribe on a written prescription . . . narcotic drugs . . . . Such a prescription shall be dated and signed by the person prescribing on the day when issued and shall bear the full name and address of the patient for whom the narcotic drug is prescribed and the full name, address and registry number under the federal narcotic laws of the person prescribing, providing he is required by those laws to be so registered . . .

A violation of this regulatory section was a misdemeanor punishable under Article 27, Sec. 30 (b).

Article 27, Sec. 277, of the Maryland Uniform Narcotics Drug Act then in effect provided, *inter alia*, that:

> It shall be unlawful for any person to . . . prescribe . . . any narcotic drug, except as authorized in this subtitle.
>
> . . . provided, however, that this section shall not apply to . . . physicians . . . in the regular course of their legitimate professional activities . . .

A violation of this section was a felony punishable under Article 27, Sec. 300 (a).

At a pretrial hearing before Judge John N. Maguire, the Appellant's counsel and the Assistant State's Attor-

---

1. Chapter 403 of the Acts of 1970 repealed Sections 276 through 313D of Article 27 of the Annotated Code of Maryland (1967 Replacement Volume and 1969 Supplement) and replaced them with a significantly altered Uniform Controlled Dangerous Substances Act. The new provisions took effect on July 1, 1970. They provided, however, that "Prosecutions for any violation of law occurring prior to the effective date of this subheading shall not be affected by these repealers or amendments, or abated by reason thereof". Section 302 (a).

ney reached an understanding that the State would proceed against the Appellant for violations of Art. 27, Sec. 277. At a second pretrial hearing before Judge Kenneth C. Proctor dealing primarily with discovery problems, the Motion to Dismiss was discussed and both Appellant's counsel and the Deputy State's Attorney for Baltimore County indicated that the State's resolution to press forward only on violations of Art. 27, Sec. 277, was to the mutual satisfaction of both parties and that the question was settled. On June 23, 1969, the Appellant filed a Suggestion for Removal and an Order of Court was signed removing the case to the Circuit Court for Harford County. When the trial commenced in Harford County on August 5, 1969, a preliminary discussion was held as to the status of any pretrial motions. It was at that time again confirmed by Appellant's counsel that the State would be proceeding against the Appellant exclusively for violations of Art. 27, Sec. 277, and that the Appellant was fully satisfied with this resolution of the problem. Consequently no objections to the form of the indictment were lodged by the Appellant just as no objections had been lodged at the earlier hearing before Judge Proctor. Maryland Rule 725 is therefore dispositive of the question on appeal.

The Appellant's second contention is that the trial judge committed reversible error by not including in his advisory instructions to the jury several sentences requested by the Appellant outlining what "good faith" would be on the part of a physician. In reviewing the full charge given by the trial judge, it is clear that the subject was adequately covered. The trial judge went to great lengths to describe those actions on the part of a physician vis-a-vis a patient which would "not be bad faith". The additional sentences requested by the Appellant, though tactically advantageous rhetoric perhaps, would have been simply cumulative. They represented an "in other words" situation, followed by a restatement in the converse of an already clear statement of the obverse. The contention is without merit.

The Appellant's third contention is that the trial court committed reversible error in denying his motion for a judgment of acquittal at the conclusion of the entire case, permitting the case to go to the jury. The test we must apply to determine whether the motion was properly denied is whether the evidence either shows directly or supports a rational inference of the facts to be proved, from which the jury could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Williams v. State,* 5 Md. App. 450, 459.

The critical question is whether the undisputed action of the Appellant in prescribing an undisputed narcotic drug to Cadet Lein was or was not within "the regular course of [the Appellant's] legitimate professional activities" as a physician so as to bring him within the exception to the prohibitory provisions of Article 27, Sec. 277.

The evidence produced by the State, which the jury was entitled to believe, showed the following. A former drug addict, Miss Christina Horn, in cooperation with the Narcotics Unit of the Baltimore County Police Department, engaged in an undercover operation in which she introduced a cadet policeman, George E. Lein, to the Appellant. Cadet Lein posed as a drug addict. Miss Horn for several weeks prior to this meeting had been going to the office of the Appellant at least once a week and "on one or two other occasions" had been there "perhaps twice a week".

The meeting at which Lein was introduced to the Appellant took place on August 23, 1968, at approximately 1:30 p.m. at the Appellant's office at 4201 Wilkens Avenue in Baltimore County. Cadet Lein testified about what occurred at that first meeting as follows:

> We arrived at approximately 1:30 p.m. and entered the doctor's office. That was myself and Christina Horn. When we entered the office, Miss Christina Horn told the doctor that she would like a prescription for some Dolophine and that I would like one too, but she stated that she had

to talk with him first because she didn't have the ten dollars necessary for the prescription and that she would pay him the following week. Dr. Coolahan asked her if she could use some of my pills until she got the money, and she stated that she couldn't because I needed all of mine, so he stated okay, so he wrote Christina Horn a prescription for Dolophine and then he started asking about me. He asked if I had ever had any before and Christina Horn said yes, that I had gotten it from my family doctor, and then Dr. Coolahan asked me why I hadn't gotten any more from him and I stated that he had tightened down and wouldn't give me any more.

The Appellant then asked Cadet Lein "how many I wanted or how many I took a day and I stated six and he told me that he'd give me thirty-six, enough for one week".

Cadet Lein then asked the Appellant for a prescription for Seconal. The Appellant, after asking Cadet Lein for his name and address, wrote the prescription for twenty Seconal tablets, "enough to last for a week", but warned "that he might have to start taking urine tests because people were starting to tighten down on him, and he might take a urine test once a week or so, just to make it look good". However, no urine test was ever taken, or any other examination made of Cadet Lein by the Appellant or by anyone else for the Appellant.

On August 28, 1968, and again on August 31, 1968, Cadet Lein had the occasion to see the Appellant in the driveway in front of the Appellant's office. On each occasion the Appellant wrote prescriptions for Cadet Lein for thirty-six Dolophine and twenty Seconal tablets and was paid $10.00. The entire transaction on each occasion was consummated in the driveway and never reached the interior of the doctor's office. On neither occasion was any question asked relating to the ostensible patient's ostensible condition. On each of these occasions, a ten dollar

fee was paid simply for a prescription refill and on each occasion the Appellant had to ask his ostensible patient the number of tablets which the prescription should prescribe.

Miss Horn testified about her prior visits to the Appellant to obtain prescriptions as well as about the August 23 meeting. Miss Horn stated that on none of her visits to the Appellant had she ever been examined by him, that he never examined her arm and that he never took a urinalysis from her. She testified further that in the August 23 conversation the Appellant told her that he might soon start having to give a urinalysis to the people who were getting prescriptions. He assured her, however, that he would let her know "plenty of time in advance". She testified that she introduced Cadet Lein to the Appellant as "a friend" and stated that "he wanted some pills too."

A Dr. J. Morris Reese was called by the State as an expert witness. Dr. Reese, in addition to his other professional qualifications, had been serving as an active member of the Subcommittee on Narcotics Addiction of the Medical and Chirurgical Faculty for four years and had been exposed to an immense amount of information on Methadone. As an active member of the Subcommittee on Drug Abuse, he attended three or four regular meetings a year which lasted three to four hours each. He testified that he had been involved with the Committee in the investigation of twelve cases involving the use of Methadone and that he was familiar with the work and findings of Drs. Dole and Nyswander, acknowledged experts in the field of Methadone treatment. The State put to Dr. Reese a hypothetical question containing all of the facts already referred to in this opinion and then asked him to express an opinion as to whether the conduct of the Appellant would "be in good faith and in the course of the professional practice of the prescribing physician?". Dr. Reese replied that it would be "extremely poor medical practice".

The Appellant complains that the hypothetical question

put to Dr. Reese was fatally deficient in that it did not specify the amount of Methadone contained in the pills prescribed by the Appellant. It is obvious to this Court that an expert could well conclude that the prescribing of narcotic drugs in any amount to "patients" who were total strangers, from whom no medical histories were taken, who were given the benefit of no even cursory physical examinations, who requested their own "medicines" by name and who established their own dosages, who paid examination-type fees for mere refills, and who were subjected to no continuing supervision would be "poor medical practice" and that knowledge of the amount of the dosage would be unnecessary to reach such conclusion.

It is equally obvious to this Court that there was abundant testimony from which the jury could fairly be convinced beyond a reasonable doubt that the Appellant's allegedly professional conduct fell so far short of any minimum standards of diagnosis, treatment and care as to be a mere subterfuge and that the Appellant was not prescribing the drugs "in the regular course of his legitimate professional activity."

*Judgment affirmed; appellant*
*to pay costs.*