## GEORGE SAMUEL ESTEP, JR., MELVIN LEON MARSHALL AND JOHN FRANCIS MARSHALL *v.* STATE OF MARYLAND

[No. 135, September Term, 1971.]

*Decided January 20, 1972.*

---

5. The assault charge was based on the allegation that appellant threw a commercial snowball at a police officer.

54

The cause was argued before ORTH, MOYLAN and GIL-BERT, JJ.

*Frank G. Perrin* for appellants.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *John C. Hancock, State's Attorney for Charles County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

George Samuel Estep, Jr., Melvin Leon Marshall and John Francis Marshall, appellants, were convicted of rape by a jury in Charles County, presided over by Judges Philip H. Dorsey, Jr. and James C. Mitchell. The jury's verdict was "* * * guilty on the first count without capital punishment as to each of the defendants." Estep received a sentence of 18 years imprisonment. Both Marshalls received 15 year terms.

The appellants assign as error the following:

"I. Were the rights of the Defendants violated un-

der the Fourteenth Amendment to the Federal Constitution and under the Uniform Extradition Law as passed by the Maryland Legislature when the Defendants were extradited from the District of Columbia without a hearing and brought to Maryland for the arraignment on July 27, 1970 and when brought to trial on November 5, 1970?

II. Were the rights of the Defendants violated when they were arrested on March 13 and 14, 1970, removed to the District of Columbia and confined in the District of Columbia while they were being charged in Maryland with Rape and were not appointed counsel until July 27, 1970?[1]

III. Were the rights of the Defendants violated when one attorney was assigned to represent three defendants and there was a conflict of interest in the defense of the defendants that prevented the attorney from properly cross-examining?

IV. Did the court err in allowing the husband of * * * [the prosecutrix] to testify as to statements which she gave her husband at the time that she arrived at her home quite sometime after the alleged occurrence and quite sometime after she was let out of the vehicle by the Defendants?

V. Were the Defendants prejudiced when the Court allowed the State to cross-examine the defendant, Melvin Leon Marshall, concerning prior inconsistent statements?

VI. Did the Court err in not granting the Defendants' motion for acquittal or when the jury decided against the weight of the evidence?

VII. Were the Defendants prejudiced by having an unfair lineup in the District of Columbia and allowing the evidence in the trial?

---

1. The appellants' brief denotes two different dates, i.e., July 27, 1970 and August 24, 1970. The record reveals counsel was appointed for Estep, John Francis Marshall and another defendant, not a party to this appeal, on July 27, 1970, and the same counsel ·was again appointed on August 24, 1970. No reason is given for the duplication.

VIII. Were the rights of the Defendants prejudiced when the defense attorneys were misled into believing that there were no prior statements or inconsistent statements made by the Defendants?

IX. Did the Court err in not granting a mistrial as requested by Attorney Bowling?"

## THE FACTS

The prosecutrix testified that on the night of March 12, 1970, she had just parked her automobile on the parking lot adjacent to her apartment house located in the District of Columbia, and was walking toward her apartment when she was approached by an armed man who told her not to scream. The armed person was joined by three others, and the four of them, along with the prosecutrix, entered a motor vehicle. After the men took from the prosecutrix her wallet and car keys they proceeded to drive a short distance to where the prosecutrix had parked her automobile. All of the persons, including the prosecutrix, then transferred from the vehicle into the automobile of the prosecutrix. She was placed in the back seat and the car was then driven to a gasoline station. The prosecutrix stated that a gun was pointed toward her at all times and she was told to keep her head away from the window. The vehicle was at the gasoline station for approximately five minutes. After departing from the service station, the automobile was driven to a wooded area in Maryland where the prosecutrix was instructed to remove her clothing. She was then advised that if she complied with her abductors' request that no harm would come to her or her children. The prosecutrix was ravished on the back seat of the car by two of the men who had abducted her. After sexual relations with those two had been completed, she was then removed from the vehicle and compelled to submit to the other two men on a blanket that was placed on the ground near the car.

Following the multiple rapes, the prosecutrix was ordered to dress and all returned to the vehicle and drove

away. Five or ten minutes later, at the suggestion of one of her assailants,[2] the vehicle returned to the place where the rapes had occurred and the prosecutrix was again compelled to submit to sexual relations with each of her abductors. The prosecutrix was then taken to an alley in the District of Columbia where she was put out of the car with the admonition that if she revealed what had occurred she and her children would be killed. She hailed a cab and went immediately to her apartment where she told her husband what had transpired. The police were called.

The prosecutrix was subsequently shown a series of photographs from which she picked the appellants and another. All four men were arrested in Charles County on March 13 and 14 and were then taken to the District of Columbia.[3] The prosecutrix again identified the appellants and the other male on April 13, 1970 in a line-up in the District of Columbia. She further made an in-court identification of the appellants and the other person at the time of the trial.

The appellants' version of the facts was somewhat different. Estep admitted to sexual relations with the prosecutrix, but stated that he had been dating her from the middle of February and that he met her on the parking lot by prearrangement. Both of the Marshalls denied any sexual relationship with the prosecutrix. All three appellants agreed that the fourth youth was not with them on the night of March 12.

# I

On September 11, 1970, the appellants, Estep and John Francis Marshall, filed a motion in the trial court to dismiss the indictments against them on the ground that they were not properly extradited. No such motion was filed as to Melvin Leon Marshall, and we do not here consider the appellants' first point as to him. Rule 1085.

2. Identified at the trial as John Francis Marshall.
3. The fourth person was also convicted. However, the trial judges granted a motion for a new trial as to him.

The issue raised by Estep and John Francis Marshall was decided by this Court in *Wilkins v. State,* 4 Md. App. 334, 242 A. 2d 808 (1968), and *Wilkins v. State,* 5 Md. App. 8, 245 A. 2d 80 (1968). In *Wilkins,* 4 Md. App. 334, Wilkins, who had been serving a 5 to 15 year sentence in the District of Columbia Correctional Institute at Lorton, Virginia, was brought to Maryland for trial under a writ of Habeas Corpus Ad Prosequendum. He argued that inasmuch as both Maryland and the District of Columbia had enacted the Uniform Criminal Extradition Act (Maryland Code Article 41, §§ 16 to 43), the Maryland court lacked jurisdiction over him. As was made vividly clear in the first *Wilkins* case, such an argument ignores the dictates of Article 41, § 40 of the Maryland Code, which provides:

> "Nothing in this subtitle contained shall be deemed to constitute a waiver by this State of its right, power or privilege to try such demanded person for crime committed in this State, or of its right, power or privilege to regain custody of such person by extradition proceedings or otherwise for the purpose of trial, sentence or punishment for any crime committed within this State, nor shall any proceedings had under this subtitle which result in, or fail to result in, extradition be deemed a waiver by this State of any of its rights, privileges or jurisdiction in any way whatsoever."

In the instant case, the appellants were likewise detained in the District of Columbia Correctional Institute, and the argument herein advanced by them is identical to that utilized by Wilkins in both of his appeals. We adopt the language of Judge Anderson in *Wilkins v. State,* 5 Md. App. 8, 245 A. 2d 80 (1968):

> "This contention is devoid of merit. A Federal prisoner, under § 4085 of Title 18, U.S.C.A., may be taken into a State court for trial with

the consent of the Attorney General of the United States, and his production is wholly a matter for the Attorney General to determine; *Marsino v. Higgins,* 10 F. 2d 534, affirmed 270 U. S. 627, and the prisoner may not complain, *Chapman v. Scott,* 10 F. 2d 156, affirmed 10 F. 2d 690, cert. denied, 270 U. S. 657; *Troyan v. United States,* 240 F. Supp. 383. Even in the absence of statute, the Attorney General has the authority to transfer a Federal prisoner to a State court for trial as a matter of comity between sovereigns. *Ponzi v. Fessenden,* 258 U. S. 254, 261, 42 S. Ct. 309, 66 L. Ed. 607; *State v. White,* 264 P. 647."

## II

Appellants' second argument attempts to equate their incarceration in the District of Columbia Correctional Institute [4] with a preliminary hearing. They argue that *Coleman v. Alabama,* 399 U. S. 1, 90 S. Ct. 1999, 26 L.Ed.2d 387 (1970) and *Kochel v. State,* 10 Md. App. 11, 267 A. 2d 755 (1970) constitutionally mandate the presence of counsel at all critical stages of criminal proceedings. *Coleman* and *Kochel* hold that a preliminary hearing is a "critical stage" requiring the appointment of counsel in all such hearings arising on and after June 22, 1970. The holding in *Coleman,* however, is not to be applied retroactively and is inapplicable to those preliminary hearings which occurred prior to June 22, 1970. *Kochel v. State, supra.*

Even if we were to assume, which we do not, that incarceration while awaiting indictment is a critical stage requiring the presence of counsel, we cannot ignore, as appellants chose to do, that *Coleman* is not to be applied in retrospect and that no counsel would have been required from the date of their apprehension on

4. The record indicates that the appellants were restrained in the District of Columbia on other charges growing out of the abduction of the prosecutrix.

March 13 and 14, 1970 until June 22, 1970, the date *Coleman* was decided.

Appellants are apparently seeking to have this Court enunciate a rule that counsel must be present at all stages following arrest. They contend that not having counsel appointed until July deprived them of their right to have their attorney "make a proper investigation of people then in the neighborhood" and that the appointment of counsel four months after their arrest further deprived them of "proper preparation for trial." We know of no authority that supports the appellants' position that defendants in criminal matters are entitled to counsel from the time of arrest.[5]

An arrest is an "initial stage" insofar as the person apprehended is concerned because it may trigger the criminal trial procedure. Nevertheless, it is not a "critical stage" as that term is applied in *Coleman, supra.*

Furthermore, there is nothing in the record to indicate that trial counsel was requested to interview witnesses, obtain statements or preserve evidence necessary for the preparation of the trial. The converse of the appellants' contention appears more readily to be true in that counsel for Estep had summoned a witness at the request of the appellant Estep who was supposed to testify that he had seen Estep and the prosecutrix together previously. However, the "witness" advised counsel that he could not "* * * take the stand and state under oath positively that she is the woman * * *." Counsel stated that the appellants had furnished him with the names of no other persons who could identify the prosecutrix as having been with Estep on previous occasions.

Appellants make the further assertion that had counsel been appointed immediately he could have ascertained the veracity *vel non* of whether the Moonlight

---

5. It would appear that such a requirement would necessitate the appointment of counsel who would then accompany the arresting officer to the scene of the arrest. This procedure would virtually preclude warrantless arrests.

Inn, located in Waldorf, Maryland, and where the appellants state they had taken the prosecutrix, was open on the night of March 12, 1970. We know of no reason why this information could not have been obtained at any time prior to trial. The only testimony as to the Inn's being closed on March 12, 1970 was from a State's witness who said he was not certain. The jury was instructed to disregard the witness' testimony. Therefore, the only evidence before the jury as to the Moonlight Inn's being open was from the appellants and was uncontradicted.

Appellants rely upon *Chandler v. Fretag*, 348 U. S. 3, 75 S. Ct. 1, 99 L. Ed. 4 (1954). There Chandler, a middle age man of little education, was indicted in Tennessee for house breaking and larceny. The offenses were punishable by a term of 3 to 10 years. The indictment charged Chandler with breaking and entering a place of business and stealing therefrom chattels of the value of $3.00. Following his arrest, Chandler was released on bail. When the case was called for trial Chandler appeared, absent counsel, and pleaded guilty. He believed "that an attorney could do him no good on said charge." He was advised by the trial judge that he, Chandler, was also being charged as an habitual offender. Under the provisions of the Tennessee law, conviction as an habitual offender mandated life imprisonment without any possibility of parole. Chandler immediately requested a continuance to obtain counsel, but the trial judge denied the request. A plea of guilty was entered to the house breaking and larceny charges and the State offered evidence to corroborate the plea. At the conclusion of the trial, the judge asked the jury to "raise their right hands if they accepted petitioner's guilty plea on the house breaking and larceny charge and if they approved of a three-year sentence on that charge." Each of the jurors raised his right hand. The judge then instructed the jury to raise their right hands a second time if "they found petitioner to be an habitual criminal." Again the jury indicated their unanimous finding by raising their right hands. The jury never left the jury box to consider the case

and the entire proceedings consumed between 5 and 10 minutes.

Subsequently Chandler attacked his conviction and the matter reached the Supreme Court. Chief Justice Warren, speaking for a unanimous court, reversed the conviction. The Chief Justice quoted from *Powell v. Alabama,* 287 U. S. 45, 71, 53 S. Ct. 55, 77 L. Ed. 158, 171, 84 A.L.R. 527, where it was said:

> "What, then, does a hearing include? Historically and in practice, in our country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. *He requires the guiding hand of counsel at every step in the proceedings against him.* Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. *If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such*

*a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense."*

The Chief Justice continued:

"A necessary corollary is that a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth." [Citations omitted].

Appellants seize upon the sentence, *"He requires the guiding hand of counsel at every step in the proceedings against him"* to bolster their argument that they were entitled to counsel from the time of their arrest. The key word in that sentence, however, is the word *"proceedings"*. "Proceeding" is defined by Black's Law Dictionary, Third Edition, to mean:

"In a general sense, the form and manner of conducting juridical business before a court or judicial officer; regular and orderly progress in form of law; including all possible steps in an action from its commencement to the execution of judgment."

The Supreme Court has held that an accused is entitled to counsel at "critical stages" of the criminal proceedings. *Coleman v. Alabama, supra.* Thus, the right to presence of counsel has been mandated at lineups, *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U. S. 263, 87 S. Ct. 1951, 18 L.Ed.2d 1178 (1967); at a preliminary hearing, *Coleman v. Alabama, supra;* during the course of the trial, *Powell v. Alabama, supra.*

We think appellants misconstrue *Chandler v. Fretag, supra.* The Supreme Court has not required the presence of counsel from the moment of arrest and we decline to do so because, in our view, an arrest is not within the ambit of *Coleman, Wade, Gilbert, Hamilton* nor *Powell.*

## III

Appellants' third contention is totally devoid of merit. They assert that there was a conflict of interest in that trial counsel defended Estep, John Francis Marshall,[6] and the individual to whom a new trial had been granted.

According to appellants, the conflict arose because the fourth defendant testified that he was not with the appellants at any time on the evening in question. Each of the appellants in turn admitted that this was true. Appellants perceive a conflict of such magnitude that "the assigned counsel could not properly defend each of his clients because he was prevented from cross-examining the others." We are unable to ascertain the existence of any conflict of interest.

> "* * * Some conflict of interest must be shown before it can be claimed that representation by an attorney also engaged by another defendant deprived him of his right to the effective assistance of counsel. * * *" *Davenport v. State,* 7 Md. App. 89, 96, 253 A. 2d 768 (1969).

In *Pressley v. State,* 220 Md. 558, 562, 155 A. 2d 494 (1959), it was held that,

> "To show prejudice there must be revealed an actual or imminently potential conflict of interest which prevented the lawyer from impartially and adequately representing his clients."

If two defendants state that a third defendant was not present at the scene of the crime and the third defendant says he was not present at the scene of the crime, there appears to be a unanimity of agreement, rather than a conflict.

## IV

After the prosecutrix was released by her captors in

---

**6.** Melvin Leon Marshall was represented by counsel of his choosing. The contention raised in appellants' argument III is not applicable as to the appellant Melvin Leon Marshall.

the alley in the District of Columbia, she took a cab home. Her testimony was that the distance to her apartment from the place where she had hailed the cab was approximately one to two miles. There was an indication that she told the cab driver what had transpired. When she arrived home at approximately 3:00 a.m., she knocked on the door in order to arouse her sleeping husband. The husband was allowed, over objection, to testify that, "When I opened the door she came in and said she had been raped, robbed, they took her keys, wallet and watch." The husband also said that he paid the cab driver's fare of $1.80. According to the husband, the wife was dazed and crying. The appellants here argue that the husband's testimony was not part of the *res gestae* and, therefore, inadmissible hearsay. In support of the appellants' contention they rely upon *Harnish v. State,* 9 Md. App. 546, 266 A. 2d 364 (1970). *Harnish* is factually inapposite. There, we reversed and remanded for a new trial because the mother of a five year old child was allowed to testify that her son related to her an event that occurred eleven days before the narration to the mother. We said at page 551:

"* * * It cannot be said that this was a declaration or utterance so contemporaneous in time and place as to have been made under the 'immediate spur' of the event or a continuing part of the transaction which had occurred eleven days before. Rather, it was 'a narrative of a completed event', given under circumstances and conditions where there had been ample time and opportunity to reflect upon and report the event. * * *"

In Wharton's *Criminal Evidence* (12th Ed.), § 282, pages 647-648, it is said:

"* * * Statements by the victim of a sexual offense, made upon the victim's return home following commission of the offense, have been

held admissible as *res gestae,* under varying circumstances." [7]

At least since *Robinson v. State,* 57 Md. 14 (1881), it has been held by the Court of Appeals, and more recently by this Court, that statements and acts are admissible in evidence as part of the *res gestae* as an exception to the hearsay rule when they are closely connected with the crime or happening. *McBriety v. Phillips,* 180 Md. 569, 26 A. 2d 400 (1942) ; *Wilson v. State,* 181 Md. 1, 26 A. 2d 770 (1942) ; *Alexander v. State,* 198 Md. 395, 84 A. 2d 98 (1951) ; *Little v. State,* 204 Md. 518, 105 A. 2d 501 (1954) ; *Reckard v. State,* 2 Md. App. 312, 234 A. 2d 630 (1967) ; *Long v. State,* 3 Md. App. 638, 240 A. 2d 620 (1968) ; *Hall v. State,* 5 Md. App. 599, 249 A. 2d 217 (1969) ; *Parker v. State,* 7 Md. App. 167, 254 A. 2d 381 (1969) ; *Harnish v. State, supra; Honick v. Walden,* 10 Md. App. 714, 272 A. 2d 406 (1971).

Evidence of the victim's complaint made while the alleged injury was recent is admissible in evidence. *Murphy v. State,* 184 Md. 70, 76, 40 A. 2d 239 (1944). Judge Parke of the Court of Appeals said in *Green v. State,* 161 Md. 75, 155 A. 164 (1931) :

"[T]he better rule, and the one more in conformity with our practice and decisions, is that, if the prosecutrix has testified to a violent assault, the fact of the making of complaint within a reasonable time under the circumstances is original evidence, and may be shown to prevent the inference that the woman did in fact maintain a silence inconsistent with her narrative at the trial; and if her testimony of the commission of the alleged crime be impeached by witnesses or by a cross-examination based on the defense that she consented or that her evi-

7. Dr. Wharton cites in support of his statement the following cases: *McMath v. State,* 55 Ga. 303; *State v. Butler,* 114 S. C. 433, 103 S. E. 762; *Williams v. State,* 145 Tex. Crim. 536, 170 S.W.2d 482; *Dickey v. State,* 147 Tex. Crim. 588, 183 S.W.2d 469; *France v. State,* 148 Tex. Crim. 341, 187 S.W.2d 80.

dence is false, the terms and details of the complaint are admissible, preferably in rebuttal (a), as corroborative evidence, if made recently (b) after the commission of the alleged crime."

See also *Shoemaker v. State,* 228 Md. 462, 180 A. 2d 682 (1962). In the instant case, the testimony of the husband as to the complaint made to him by the prosecutrix was admissible under *Green* and *Shoemaker, supra,* when the prosecutrix' testimony was attacked on cross-examination based on the theory of her consent to sexual intercourse with the appellant Estep.

In *Smith v. State,* 6 Md. App. 581, 252 A. 2d 277 (1969), Judge Thompson, speaking for this Court, discussed the case of *Legore v. State,* 87 Md. 735, 41 A. 60 (1898), wherein a prosecutrix complained to her husband immediately following his return home several hours after the rape. The complaint was held to be admissible. In *Smith,* Judge Thompson said that in this state a complaint by a rape victim may be admitted as "original evidence to support the testimony of the victim as to the time, place, crime and name of the wrongdoer." In a proper case, the rape victim's complaint can also be part of the *res gestae* and admissible even if the victim did not testify. *Smith, Green, Shoemaker, supra.*

In *Price v. State,* 5 Md. App. 127, 131, 245 A. 2d 600 (1968), this Court said:

"In the instant case the declaration was made at such a time and under such circumstances that the exciting influence of the occurrence clearly produced a spontaneous and instinctive reaction on the part of the declarant. She was still emotionally engulfed by the situation * * *."

Appellants imply that the lapse of time between the release of the victim and the statement to her husband gives rise to an inference that the victim had sufficient time to contrive an excuse for her being out at such a late hour. There was a question of credibility to be determined by the trier of fact.

It is significant that at the time the State offered the testimony of the victim's husband, the only testimony before the jury bearing upon any alleged social relationship between the victim and Estep was the prosecutrix' steadfast denial on cross-examination that she knew Estep prior to the criminal assault upon her, much less dated him. The fact that there was a slight interval between the time when the prosecutrix stated she was released by appellants and the time she arrived home—consumed in travel—does not render the statement made by the prosecutrix to her husband inadmissible. In VI Wigmore, *Evidence,* (3rd Ed.), § 1750, it is stated:

> "[t]o argue from one case to another, on this question of 'time to devise or contrive' is to trifle with principle and to cumber the records with unnecessary and unprofitable quibbles."

The Court of Appeals in *Robinson v. State, supra,* quoted with approval I Taylor on Evidence, § 521:

> "The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstance, and in its turn becomes the prolific parent of others, and each, during its existence, has its inseparable attributes, and its kindred facts, materially affecting its character, and essential to be known, in order to a right understanding of its nature. These surrounding circumstances may always be shown to the jury along with the principal fact, provided they constitute parts of what are termed the *res gestae,* and whether they do so or not must in each particular case be determined by the judge in the exercise of his sound discretion, according to the degree of relationship which they bear to that fact * * *."

See also *Hall v. State, supra; Honick v. Walden, supra.*

There is no litmus-paper test that may be conducted to determine whether or not, in a given set of facts, a statement is part of the *res gestae*. Such a determination, under *Robinson, supra,* is left for the trial judge to make in the light of the surrounding circumstances, subject to careful scrutiny on appeal.

The testimony of the prosecutrix, if believed, is sufficient to sustain the convictions. *Williams v. State,* 11 Md. App. 350, 354, 274 A. 2d 403 (1971); *Coward v. State,* 10 Md. App. 127, 130, 268 A. 2d 508 (1970); *Lucas v. State,* 2 Md. App. 590, 593, 235 A. 2d 780 (1967).

## V

Appellants' next question the trial judges' ruling permitting the State to cross-examine the appellant, Melvin Leon Marshall [8] as to a prior inconsistent statement.[9]

It has long been held that prior inconsistent statements may be used to impeach a witness. *Davis v. State,* 38 Md. 15 (1873); *Brown v. State,* 72 Md. 468 (1890); *Mahan v. State,* 172 Md. 373, 191 A. 575 (1937); *Kantor v. Ash,* 215 Md. 285, 137 A. 2d 661 (1958); *Joppy v. Hopkins,* 231 Md. 52, 188 A. 2d 545 (1963); *Sanders v. State,* 1 Md. App. 630, 232 A. 2d 555 (1967); *Franklin v. State,* 6 Md. App. 572, 252 A. 2d 487 (1969). In *Cooper v. State,* 14 Md. App. 106, 286 A. 2d 579, it was stated:

> "Provided a proper foundation has been laid, the credit of a witness may be impeached by showing he has made statements which contradict his testimony in respect to material facts (but not in respect to facts that are collateral, irrelevant or immaterial)."

During cross-examination of appellant, Melvin Leon Marshall, the State sought to use a prior inconsistent statement made by Marshall at the time of his apprehen-

---

8. The appellant, John Francis Marshall, also made a prior inconsistent statement.
9. The prior inconsistent statement was to the effect that the appellant, Melvin Leon Marshall, was at home on the night of the rapes.

sion. No question of the rights conferred upon an accused within the ambit of *Miranda v. Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), is involved in this appeal. After an exclusionary hearing [10] the trial judges ruled that the statement was admissible. Trial counsel expressed dire concern over the fact that the statement would or could cause the jury to disbelieve the other defendants. The jury was instructed that they could consider the statements of both Marshalls as reflecting upon their credibility. They were further advised:

> "You do not have any such evidence with respect to George Estep [nor with respect to the other defendant] and I advise you that you are not to question their credibility by the question which has been raised as to the credibility of Melvin Marshall and John Francis Marshall because of their inconsistent statement[s].
>
> "In trying multiple defendants as we are in this case, each defendant is entitled to have the evidence considered with respect to him as though he was being tried alone. The guilt or innocence of any one defendant of any one of the crimes charged should not control or influence your verdicts respecting the other defendants."

Additional instructions were requested by the appellants that the inconsistent statements were not to be considered as a "presumption of guilt" and the court so instructed the jury. There is nothing in the record to indicate that the jury did not adhere to the instructions of the trial judges.

We perceive no error in the admission of the appellant's prior inconsistent statement into the evidence, and this is particularly so in view of the safeguards that the trial judges erected around the other defendant Estep in their charge to the jury.

10. Rule 725(d).

## VI

Appellants assert that their motion for judgment of acquittal at the conclusion of the evidence should have been granted. We disagree. In considering a motion for judgment of acquittal this Court, when asked to review the failure of a trial court to grant the motion, has to apply the test of whether there was any direct evidence or inferences therefrom before the trial court sufficient for the jury to find beyond a reasonable doubt that the defendant was guilty of the crime charged. *Sizemore v. State,* 5 Md. App. 507, 248 A. 2d 417 (1968) ; *Jennings v. State,* 8 Md. App. 312, 259 A. 2d 543 (1969) ; *Coolahan v. State,* 10 Md. App. 365, 270 A. 2d 669 (1970). The testimony of the prosecutrix, standing alone, if believed, was sufficient to convict. *Williams v. State, Coward v. State, Lucas v. State, supra.*

We think the testimony produced was sufficient to carry the case to the jury and sufficient to sustain the convictions.

Appellants' motion was properly denied.

## VII

On April 13, 1970, a lineup was conducted in the District of Columbia. Appellants attack the composition of the lineup and assert that it was "* * * manifestly unfair because police cadets were used alongside the Defendants in the lineup." They further argue that the victim had been supplied photographs prior to the lineup.

The only evidence that the victim had been supplied photographs prior to the lineup was on March 13, 1970, the day following the rapes. At that time, the prosecutrix picked her assailants' photographs from a series of pictures. There is nothing in the record to indicate that the photographic identification procedure utilized by the police at the time the prosecutrix identified her assailants was "impermissibly suggestive," *Simmons v. United States,* 390 U. S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968), nor was any contention made to that effect.

The lineup contained a total of 10 young men who were

of similar build and complexions to that of the appellants. Two of the persons in the lineup were police cadets and one was a police officer. We have conducted an independent review of the photograph of the lineup. It depicts persons of similar physique, physiognomy, general appearance and clothing, and is not so "impermissibly suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law." *Metallo v. State,* 10 Md. App. 76, 267 A. 2d 804 (1970). There is nothing about the lineup that places it within the proscription of *Foster v. California,* 394 U. S. 440, 89 S. Ct. 1127, 22 L.Ed.2d 402 (1969), where an accused was placed in a lineup with persons considerably shorter in stature. There, when no identification was made, a one-to-one confrontation was arranged, and the victim made only a tentative identification. It was not until a second lineup, where the accused was the only person who had been in the first lineup, that the victim made an "identification."

The prosecutrix identified the appellants at the lineup within five seconds. We think the lineup was legal. Additionally, the appellants admit being with the prosecutrix on the night she was raped.

## VIII

Penultimately, appellants argue that their defense attorneys were misled into believing that there were no prior inconsistent statements made by appellants. In their brief appellants state:

> "Mr. Bowling, representing three Defendants, had previously inquired of the State's Attorney if there were any statements and was advised that there were none and he did not attempt to obtain copies of the said statements or proceed further."

Appellants misinterpret the record. The record indicates that defense counsel said:

> "* * * The situation has arisen as a result of

my conversation with the defendants which they misadvised me they had given no statements to the police. Consequently, I didn't inquire of Mr. Hancock [State's Attorney for Charles County] whether he asked him to submit to me a copy of any statement because I was led to believe there was no statement.

"I again asked them [appellants] about it today and they, of course, still say 'we didn't give no statement, they asked us about a kidnapping and we don't know anything about such offense.' "

We do not interpret the remarks in the transcript to indicate that the appellants' defense counsel was misled by the State's Attorney. It is patent that he was misled, but the misleading was by the appellants, not the State. *Clark and Richardson v. State,* 6 Md. App. 91, 250 A. 2d 317 (1969), relied on by the appellants, has no application to the case at bar. In *Clark,* a pretrial motion for discovery was filed pursuant to Maryland Rule 728. To a question as to whether any statement had been made by the defendant, the State answered, "None." Here, no attempt at discovery through the Rules was made. We do not fault defense counsel in this regard because he was lulled into believing that no statement had been made by the appellants whom he represented and who, for some strange reason, known only to them, persisted in such an assertion until actually confronted on cross-examination with the statement.

## IX

Finally, appellants argue the trial court should have granted a defense motion for a mistrial. The appellants' motion was grounded in the belief that two of the three defendants that court-appointed counsel had been assigned to defend had different defenses than the third. The question of whether or not to grant a mistrial is within the sound discretion of the trial court. *Gerstein v.*

*State,* 10 Md. App. 322, 270 A. 2d 331 (1970) ; *Parker v. State,* 7 Md. App. 167, 254 A. 2d 381 (1969) ; *Carroll v. State,* 3 Md. App. 50, 237 A. 2d 535 (1968).

The thrust of the appellants' argument in support of their last issue is a "rerun" of their fifth contention. Our holding there is dispositive here.

*Judgments affirmed.*