STATE OF NEW JERSEY, PLAINTIFF, v.
FRANK COSTAGLIOLA, DEFENDANT.

Passaic County Court
Law Division (Criminal)

September 28, 1976.

*Mr. Michael R. Ascher* for plaintiff (*Mr. Burrell Ives Humphreys,* Passaic County Prosecutor, attorney).

*Mr. Robert C. Matule* for defendant (*Messrs. Matule & Trawinski,* attorneys).

MARTIN, J. S. C., Temporarily Assigned. Defendant pleaded guilty to a complaint charging him with violating *N. J. S. A.* 24:21–20a(4), possession of less than 25 grams of marijuana.[1] A sentence to six months probation, a fine of $100 and $10 costs was imposed. During the course of his probationary supervision he was advised by a probation officer to inquire concerning his eligibility for supervisory treatment pursuant to *N. J. S. A.* 24:21–27. Defendant secured an attorney who filed a motion in the Totowa Municipal Court seeking to vacate the sentence imposed and to place him under a supervisory treatment program. The municipal judge held that he had neither statutory nor rule authority to do so, and an appeal to the Passaic County Court followed.

The record on appeal reveals two arguments which were advanced in opposition to the motion for vacating the judgment and seeking supervisory treatment. It should be noted that the arguments raised and discussed are not definitively disposed of at the municipal court level, but are present in the record and must be considered by this court for a proper disposition of the appeal.

The conflicting positions between defendant and the State (municipal court) center first on the effect of *N. J. S. A.*

[1] It appears in the record that the defendant waived his right to counsel when entering this plea. This is not an issue on appeal.

24:21–27, specifically, the language: "charged with or convicted of any offense," insofar as defendant's eligibility is concerned, since he is already serving *a sentence* for violating *N. J. S. A.* 24:21–20a(4). Secondly, the court must dispose of the issue raised by the court below, that *N. J. S. A.* 24:21–27 may not apply to violations of *N. J. S. A.* 24:21–20a(4) as this latter statute has recently been amended by the Legislature without amendment of *N. J. S. A.* 24:21–27 to include a violation of *N. J. S. A.* 24:21–20a(4).

In construing the suspension statute the primary function of the court is to implement the essential objective and purpose for which this particular legislation was enacted. *State v. Madden,* 61 *N. J.* 377 (1972); *West Milford Tp. Planning Bd. v. West Milford Tp. Council,* 123 *N. J. Super.* 135 (Law Div. 1973).

Where the application of a statute is involved, intention is to be gleaned from the words used, and they are to be given their plain, ordinary and well understood meaning in the absence of an explicit indication to the contrary. *Rubamer v. Thompson,* 130 *N. J. Super.* 181 (Law Div. 1974); *Albert F. Ruehl Co. v. Bd. of Trustees of Schools for Indus. Ed.,* 85 *N. J. Super.* 4 (Law Div. 1964). "[The court has] no legislative authority and should not construe statutes any more broadly nor give them any greater effect than their language requires." *Belfer v. Borrella,* 9 *N. J. Super.* 287, 293 (App. Div. 1950). See also, *Mountain Lakes Bd. of Ed. v. Maas,* 56 *N. J. Super.* 245 (App. Div. 1959), aff'd 31 *N. J.* 537 (1960). Although a fundamental principle, it might well be noted that penal statutes are to be strictly construed. *State v. Edwards,* 28 *N. J.* 292 (1958); *Sate v. Genser Trucking Co., Inc.,* 87 *N. J. Super.* 43 (Cty. Ct. 1965). In the exposition of statutes the judiciary is to accord to a legislative expression its usual connotation and intendment, relating particular words and phrases in context so that each individual part or section is made consistent with the general objective of the statutory system as a whole. *Cedar Park Cemetery v. Hayes,* 132 *N. J. Super.* 572 (Law Div. 1975);

*Presberg v. Chelton Realty Inc.*, 136 *N. J. Super.* 78 (Cty. D. Ct. 1975).

Initially, the State contends that defendant cannot avail himself of the benefits of the suspension statute since a judgment on conviction (a sentence) has already been entered against him which he is now serving. It is argued that as a result of this judgment defendant cannot be considered as being "charged with or convicted of any offense" within the meaning of *N. J. S. A.* 24:21–27.

The court would have to construe the word "conviction" to mean "conviction and sentence" or "conviction and judgment" in order for defendant to come within the ambit of the statute. Therefore, we must examine the meaning accorded the word "conviction" as used in this statute.

The decisions in this State have concluded that the ordinary legal meaning of conviction, when used to designate a particular stage of a prosecution, is the confession of the accused in open court, or the verdict returned against him, which determines the fact of his guilt. "Judgment" or "sentence" is the appropriate word to denote the action of the court before which the trial is held, declaring to the convicted defendant the consequences of the guilty verdict. This distinction between "conviction" and "judgment" has generally been observed in New Jersey. *State v. Henson*, 66 *N. J. L.* 601 (E. & A. 1901); *Stewart v. Stewart*, 93 *N. J. Eq.* 1 (Ch. 1921). In *State v. Mc Call*, 27 *N. J. Super.* 157 (App. Div. 1953), where the court interpreted the word "conviction" in the context of a criminal statute, it concluded that the Legislature used the words "conviction" and "sentence" in a mutually exclusive manner. See also, *State v. Baker*, 133 *N. J. Super.* 398 (App. Div. 1975).

Subsection b of *N. J. S. A.* 24:21–27 states that, "upon violation of a term or condition of supervisory treatment the court may *enter a judgment of conviction* * * *" (emphasis supplied). This language, combined with the use by the Legislature in subsection a(2) of the phrase, "after plea

of guilt or finding of guilt, and *without entering a judgment of conviction* * * *" (emphasis supplied), is further indication that the Legislature draws a sharp distinction between the term "judgment" and "conviction." Therefore, for the purpose of evaluating defendant's ability to avail himself of the benefits of the suspension statute, the Legislature's use of the word "conviction," as interpreted, would exclude a defendant already serving a sentence.

This construction of *N. J. S. A.* 24:21–27 is buttressed by the plain meaning of the language utilized by the Legislature in setting out the two stages of prosecution where the court has been granted the discretionary power to place defendants under supervisory treatment.

*N. J. S. A.* 24:21–27(a)(1) states that the court may "suspend further proceedings and * * * place [defendant] under supervisory treatment." In *Estep v. State,* 14 *Md. App.* 53, 286 *A.* 2d 187, 193 (Ct. Spec. App. 1972), the term "proceeding" was defined "in a general sense [as] the form and manner of conducting judicial business before a court or judicial officer." See also, *Jamesburg v. Hubbs,* 6 *N. J.* 578 (1951). Therefore, under this subsection the court has the discretionary power to halt the judicial business before the court prior to its completion and, with the consent of defendant, place him under supervisory treatment. This interpretation is further supported by the statutory language of subsection b of *N. J. S. A.* 24:21–27, which states that "upon violation of a term or condition of supervisory treatment the court may * * * where there has been no plea of guilt or finding of guilt, *resume proceedings"* (emphasis supplied).

*N. J. S. A.* 24:21–27(a)(2) states that "after plea of guilt or finding of guilt, *and without entering a judgment of conviction,* * * * [the court may] place [defendant] on supervisory treatment" (emphasis supplied). Subsection b further states that "upon violation of a term or condition of supervisory treatment the court may *enter a judgment of conviction* and proceed as otherwise provided" (emphasis sup-

plied). Under these subsections the court has been granted discretionary power only where there has already been a plea or finding of guilt but there has not yet been an entering of judgment on conviction. To interpret this statute to include the situation where defendant has already been sentenced would render the phrases "without entering a judgment of conviction" and "may enter a judgment of conviction" inoperative and meaningless. This construction is inconsonant with the plain meaning of the language and with the requirement that the court give full force and effect to every clause and phrase of a statute. "A construction that would render any part of the statute inoperative, superfluous or meaningless, is to be avoided." *State v. Canola,* 135 *N. J. Super.* 224, 235 (App. Div. 1975); *State v. Sperry & Hutchinson Co.,* 23 *N. J.* 38 (1956); *Bean v. Strelecki,* 101 *N. J. Super.* 310 (App. Div. 1968).

▆▆ Taking all of these factors into consideration, this court concludes that the Legislature, under *N. J. S. A.* 24:21–27, intended to grant courts the discretionary power to place defendants under supervisory treatment only where the proceedings have commenced but there has not yet been a plea or finding of guilty, or where there has already been a plea or finding of guilty but there has not yet been an entering of judgment on conviction. Defendant, having had a judgment of conviction entered against him and already serving same, is excluded from availing himself of the benefits of the suspension statute as it is presently written.[2]

▆▆ At the municipal trial the judge discussed, but did not definitively dispose of, the question concerning the applicability of *R.* 3:21–10. That rule states the procedural methods to be used in attempting to obtain a reduction or change of sentence "after the date of the judgment of conviction." There is no indication in the language used in *R.*

---

[2]This legal conclusion is not applicable to a timely appeal *de novo* pursuant to *R.* 3:23–2.

3:21–10 or in the comments to it that the Supreme Court intended to include within the purview of the rule the application as made by defendant in this matter.

The second objection to suspension raised by the State is that the provision of *N. J. S. A.* 24:21–27 do not apply to violations of *N. J. S. A.* 24:21–20a(4). *N. J. S. A.* 24:21–27 is applicable when a person "is charged with or convicted of any offense under subsection 20a(1), (2) and (3) and b, * * *" The State argues that the court should accept this numerical reference to subsection 20 on its face and therefore conclude that the Legislature intentionally excluded subsection 20(a)(4) (possession of less than 25 grams of marijuana) from the provisions of *N. J. S. A.* 24:21–27.

> In construing the legislative intent we must look to the objective sought to be attained, the nature of the subject matter, the contextual setting, and all statutes *in pari materia*. The statute must be construed as a whole with reference to the system of which it is a part.

[*Pfitzinger v. Bd. of Trustees,* 62 *N. J. Super.* 589, 601 (Law Div. 1960)] It should not be construed so as to reach an absurd or anomalous result, but should receive a reasonable construction to serve apparent legislative purposes. *State v. Brown,* 22 *N. J.* 405 (1956); *Davis v. Heil,* 132 *N. J. Super.* 283 (App. Div. 1975), aff'd 68 *N. J.* 423 (1975)

Considering the legislative history of Title 24, the court stated in *State v. Di Luzio,* 130 *N. J. Super.* 222 (Law Div. 1974):

> The purposes behind granting a suspension of proceedings for certain first offenders charged with the use or possession of narcotics is to insure "that youthful offenders are not saddled with a lifetime arrest record" and to channel such offenders into appropriate treatment and supervisory programs. An intensified treatment program may be the best hope of combatting the drug problem. [at 228–229]

In April 1970 Governor William Cahill, in his special message to the Legislature, "Drug Abuse — Problem of the Decade," recommended a basic rewriting of the New Jersey narcotics laws which would distinguish between professional criminal drug pushers and the victims of their effort, and would provide penalties that bear "a rational relationship to the social harm of the offense." These recommendations included reducing the criminal penalties for possession of small amounts of marijuana intended for personal use and giving judges the option, in cases involving first offenders charged with the use or possession of drugs, of deferring criminal proceedings and placing offenders under supervisory treatment.

In light of these goals it would be absurd and anomalous to attribute to the Legislature the intent to place first offenders who are in possession of or under the influence of cocaine, opium and heroin, under supervisory treatment and not provide the same benefit to those whose first offense is marijuana.

This position is further supported by the language in *N. J. S. A.* 24:21-27(a) which states that:

> Whenever any person who has not previously been convicted of any offense under the provisions of this act, or, . . . under any law of * * * this state * * * relating to * * * marijuana * * * is charged with or convicted of any offense under subsection 20a(1), (2) and (3) and b, the court may: (1) suspend further proceedings and * * * place [defendant] under supervisory treatment.

The inclusion of a marijuana conviction as a previous offense which denies a person the benefits of the suspension statute, clearly manifests the Legislature's intent to deal with the problem of first-offense marijuana use under the ambit of *N. J. S. A.* 24:21-27.

The absence of subsection 20(a)(4) from the numerical reference in *N. J. S. A.* 24:21-27 can be characterized as a clerical error which occurred as a result of the Legislature's inadvertent failure to alter the reference to conform with the numerical reorganization necessitated by its amendment

of *N. J. S. A.* 24:21–20 to include an additional numbered category of drug offenses.

There are no New Jersey cases on this point. However, in *Ronson Patents Corp. v. Sparklets Devises, Inc.,* 102 *F. Supp.* 123 (E. D. Mo. 1951), and *Fleming v. Salem Bros. Co.,* 38 *F. Supp.* 997 (D. Or. 1940), the courts concluded that a palable clerical error should not override obvious legislative intention. In construing a statute the court may correct such errors whenever necessary to carry out the intention of the legislature—the intent being gathered from the legislation as a whole in conjunction with the policy and spirit of the law as reflected in its legislative history. Where the legislative intent is clear, it must be given effect regardless of inaccuracies of language. Accordingly, the courts in these cases concluded that they had the authority to disregard and rectify numerical errors in statutes. See also 82 *C. J. S. Statutes* §§ 341–342; Black on Interpretation of Law (2 ed.) §58; *Endlich, Interpretation of Statutes,* §319; *State Prop. and Bldg. Comm'n v. Hays,* 346 *S. W.* 2d 3 (Ky. Ct. App. 1961).

*Warren v. Marion Cty.,* 222 *Or.* 307, 353 *P.* 2d 257 (Sup. Ct. 1960), deals specifically with the problem of inconsistent references caused by the numerical reorganization of amended statutes. In this case the Oregon Legislature enacted a statute with a numerical organizational scheme. An examination of the legislative history of this statute revealed that a clerical error was made in the course of amending. In that process, one of the sections of the statute was omitted and the remaining sections were then renumbered. However, the Legislature inadvertently neglected to amend a reference to this statute in a companion bill to reflect the altered numbering. The court determined that it had the authority to make the revision necessary to express the real legislative purpose.

Considering the above, this court concludes that the exclusion of subsection 20(a)(4) of *N. J. S. A.* 24:21–20 from the numerical reference in *N. J. S. A.* 24:21–27 was a clerical

error which occurred as a result of the Legislature's inadvertent failure to alter the reference to conform with the numerical reorganization necessitated by the Legislature's amendment of *N. J. S. A.* 24:21–20. It is clear that the Legislature intended to grant the benefits of supervisory treatment under *N. J. S. A.* 24:21–27 to those whose first offense is possession of less than 25 grams of marijuana.